## JOHN PUNTON, Respondent, v. UNITED STATES LIFE INS. CO., Appellant.

**In the Kansas City Court of Appeals, December 4, 1922.**

1. **INSURANCE: Agency: ''Regular'' Agent Held not to be ''General'' Agent.** Evidence that there appeared on the office door of a local agent words to the effect that he was a "regular agent," *held* that such designation was not, as a matter of law, equivalent to that of a "general agent."

2. ———: ———: **Evidence That Local Agent was Also Styled as ''Manager'' Held Insufficient of Itself to Show That Local Agent was General Agent.** Evidence that defendant styled its local agent as "manager" is not sufficient of itself to show that local agent was general agent.

213 M. A.—4

ON REHEARING.

3. ———: Representations: Evidence Held Insufficient to Show Plaintiff Relied on Representations of Agent and That He was Induced Thereby to Take Out Policy by Reason Thereof. In a suit upon an ordinary life guaranteed income plan insurance policy, having a "bonus period" of twenty years, to recover the amount plaintiff was guaranteed he would receive in cash at end of "Bonus period," evidence *held* insufficient to show that plaintiff relied on the representations claimed to have been made to him by agent and that he was induced to take out policy by reason thereof, and the fact that such representations were contained in a rider attached to policy by the local agent without authority did not bind the insurer as the rider was by reason thereof no part of the policy.

4. ———: Pleading: Petition upon Guaranteed Income Policy Having a "Bonus Period" Held Broad Enough to Permit Recovery of the Bonus Actually Earned. In an action upon an ordinary life guaranteed income plan insurance policy having a "bonus period" to recover the amount plaintiff claimed was guaranteed he would receive in cash at end of "bonus period," petition alleging plaintiff was enttiled as a cash option to the payment due him by defendant upon the terms of the policy in a certain sum, *held* broad enough to permit a recovery of the bonus actually earned.

5. APPEAL AND ERROR: It is Duty of Appellate Court to Uphold Decision of Lower Court if it Can be Sustained upon Any Theory. If the decision of the lower court can be sustained upon any theory, it is the duty of the appellate court to uphold it, even though the trial court decided case upon an erroneous theory.

6. ———: Burden of Proof: Where Certain Estimates Were Made at Time Policy was Taken Out by Insured as to Amount Payable under Policy after Lapse of Certain Period, the Burden in the Event of Dispute, was on Insurer to Show the True Amount Payable. In a suit to recover guaranteed cash payment under a life guaranteed income plan insurance policy where it appeared that policy provided for a bonus to be apportioned at end of certain period, which might be withdrawn in cash and at time policy was applied for, insurer made certain estimates as to the amount of the payments, *held* that the burden was upon insurer to show the true amount, if it meant to dispute the estimate.

Appeal from the Circuit Court of Jackson County.—*Hon. Charles Blackmar,* Special Judge.

·AFFIRMED.

*Humphrey & Boxley* for respondent.

*Hermann Brumback* for appellant.

BLAND, J.—This is an action at law upon a life insurance policy, known as "ordinary life guaranteed income plan" having a "bonus period" of twenty years. Plaintiff seeks to recover the amount that it is claimed was guaranteed that he would receive in cash at the end of the "bonus period." There was a trial before the court without the aid of a jury, resulting in a judgment in favor of plaintiff in the sum of $4010, and defendant has appealed.

The facts show that the policy was dated February 9, 1900, and was issued to plaintiff by the defendant, a life insurance company of the State of New York. It was signed at that place and sent to defendant's local agent in Kansas City, Missouri, to be delivered to plaintiff who was and is a practicing physician of said city. When delivered it contained the following provision—

## "RESERVE AND BONUS OPTIONS.

VII. The Bonus Period under this policy will be completed on the eleventh day of January, 1920. If the insured be living, and this policy be in force, the said John Punton may then, upon surrender hereof:

First—Withdraw in cash the reserve of nineteen hundred and seventy-four and 30/100 dollars; or

Second—Take paid-up life policy for three thousand and fifty dollars; or

Third—Receive an annuity of two hundred and five dollars on the life of the insured.

In addition to the above, the Bonus then to be apportioned hereto may be

First—Withdrawn in cash; or

Second—Used to increase the annuity on the life of the insured.

N. B. If the total paid-up insurance exceeds the amount of the policy, evidence satisfactory to the Com-

pany that the Insured is in good health will be required. If the Insured elects to continue this policy, he may withdraw the Bonus in cash, or use it to purchase either paid-up insurance or annuity as above.''

On the margin of the policy and over this part of it was pasted a typewritten slip which reads as follows:

## ''CASH OPTIONS.

Guaranteed reserve, ....... $1970
Surplus 1900 basis, ........  2040 ......... $4010

### PAID-UP POLICY OPTIONS.

Paid-up policy equivalent to
reserve ..................... $3050
Paid-up policy equivalent to
surplus, .....................  3140 ........$6190.''

The evidence shows that this slip was not on the policy when it was sent to the local agent for delivery. The local and soliciting agent did not testify but there is only one inference to be drawn from the evidence and that is that he attached the typewritten slip. It is upon the policy and this slip, which plaintiff claims is a promise on the part of defendant to pay him on January 11, 1920, $4010 in cash, that this action is based. At the maturity of the twenty-year bonus period defendant refused to pay the $4010, but defendant alleged in its answer that it offered and still offers to pay plaintiff the guaranteed reserve of $1970 plus $100.95, which latter sum it is alleged was the amount of the bonus or surplus due under the policy. The answer, which is sworn to, denies the execution of the policy sued on, that is, the regular part of the policy together with the typewritten slip pasted upon the same, but admits the execution of the policy without the printed slip. The evidence shows that the defendant did not know that the policy had attached thereto the typewritten slip until at the end of the twenty-year period when it received a letter from plain-

tiff's attorney claiming for plaintiff the amount mentioned in the slip.

The application for the policy provided that it together with the policy was the sole basis of the contract between plaintiff and defendant and that "no information or statement, unless contained in this application, made, given, received or acquired by any person at any time shall be binding on the company . . . that only the president together with the secretary or the actuary shall have power to alter or waive the policy or any condition thereof;" "that in any distribution of bonus, profit, or surplus the company's method and determination of the amount to be apportioned to any policy issued hereon is hereby ratified and accepted." There was a contract introduced in evidence between the defendant and the local agent employing the latter as agent. It limits the agent's authority and in no sense gives him the authority of a general agent. The contract is voluminous and it is not necessary to set it out. Suffice it to say, it employs the agent to solicit applications for insurance and to forward the same to the defendant, to deliver policies, to collect premiums and to give receipts, and it specifically provides "that said agent has no authority to make, alter or discharge any contract, nor waive any forfeiture nor incur any liability or debt for or against such company."

There is no evidence in the record that defendant held out the local agent as a general agent or as having power to make contracts of insurance or altering policies issued by it by inserting slips such as was pasted upon this policy. Plaintiff testified that he saw on the office door of the local agent words to the effect that he was a "regular" agent. There was no evidence tending to show what kind of an agent a regular agent of the insurance company is. We cannot say as a matter of law that such designation is equivalent to that of a "general agent." There is no evidence that the defendant knew of the wording on the door of the agent's office. There is evidence that the local medical examiner addressed a letter to the local agent as "general agent" but whether

this constituted a holding out on the part of the company that the local agent was a general agent is at least a very serious question in the absence of a showing of the authority of the local medical examiner. However, there was no evidence that plaintiff saw or knew anything about this letter. Certainly there was no holding out to the plaintiff in connection with the letter. There was also evidence that defendant styled its local agent as "manager." Whether plaintiff knew of this is not in evidence. A title of this kind does not of itself show that the local agent was a general agent.

Even should we assume that the burden was upon defendant to show that the typewritten slip was an alteration of the policy, or, in other words, that the presumption is that the slip was a part of the policy when issued by defendant at New York, all of the facts are shown in evidence, undisputed, and it clearly appears that it was placed upon the policy by a local agent of limited authority and with no power to either make a contract of insurance of this kind or to alter or add to the original policy by inserting an agreement such as is contained in the slip. This case is to be distinguished from that of Thomas v. Equitable Life Assurance Society, 198 Mo. App. 533. In that case the agent who made the contract with plaintiff to pay the amount shown upon the slip pasted upon the policy was a general agent of the insurance company.

However, in plaintiff's reply he denies all new matter contained in the answer and alleges that prior to the issuance of the policy representations were made to him that at the end of the twenty-years he would receive the amount of bonus or surplus stated in the typewritten slip, to-wit, $4010; that through advertisements, circulars and defendant's officers and agents promising that at the end of the bonus period he would have the right to take a certain sum in cash, defendant induced plaintiff to buy the policy of insurance; that it was represented to plaintiff that at the end of the bonus period plaintiff would have the option to take a certain sum in cash; that

when the policy was delivered to plaintiff said sum was represented and fixed by the typewritten slip attached to the same; that relying upon "such representations" plaintiff was induced to purchase the policy sued on and at the end of the bonus period plaintiff elected to take the sum of $4010 "in accordance with the provisions of said representations as embodied in said slip;" that when plaintiff received the policy stating that the bonus was $2040 that he understood that that was the amount the company had apportioned to the policy as defendant had a right to do under the terms of the application; that the provision in the application "that only the president together with the secretary or the actuary shall have the power to alter or waive the policy or any condition thereof" was intended to mean and did mean that no such alteration should be made after the delivery of the policy to the insured, and plaintiff alleged that there was no alteration after the delivery of the policy to him. Plaintiff further alleged that the clause in the application which provides "that in any distribution of bonus, profit, or surplus, the company's method and determination of the amount to be apportioned to any policy issued hereon shall be ratified and accepted" was intended to mean and did mean that defendant was in possession of data by which it could in advance determine the amount of such bonus or surplus and that the amount as stated in said slip, to-wit, $2040, was the amount as determined by defendant, and that it was in consideration of such understanding and said representations that plaintiff purchased said policy and that he would not have purchased it had it not been for such representations, and that defendant was estopped to set up its defense that said surplus as stated in said slip was not the amount to which plaintiff was entitled.

Plaintiff's evidence wholly fails to show that it was represented to him that the bonus or surplus at the end of the twenty-year period was to be $2040. Plaintiff testified that he was solicited for the insurance by the local agent; that he signed the application for the in-

surance and handed it to the agent and some time there-after the agent delivered the policy to him with the slip attached; that during the month prior to the maturity of the twenty-year bonus period he, in response to a letter asking him to call at the office of defendant's local cashier, went to said office in Kansas City and was there offered the sum of $2075.25 in settlement of the guaranteed reserve of $1970 plus what was claimed by the defendant to be the bonus or surplus that the policy earned during that period.

He told the cashier that he was not satisfied with that amount; that it was not what he expected; that "it seemed such a small amount to me because I had been promised I was to get more than I put in and it wasn't anywhere near what I put in." He testified that he told the cashier "If that is all the company will allow me I presume I will have to take it but I don't like it; before I take it I will have to see my lawyer about it." He testified that he may have told the cashier to send a form of a receipt to him in care of his son as he was going away. The cashier told him that his proofs could not be taken at the time of the conversation because he had to be alive when the money became due, which was in the following month. It was left to the cashier to forward to him the necessary document for him to execute.

At the time of the conversation he did not know how much he was going to get. He testified that he did not believe that he demanded of the cashier any specific sum of money; that he told the cashier that he was not satisfied with the amount that was offered, that he was disappointed; that "it was such a small amount that it took my breath away" and he told the cashier "That I thought I was going to get as much as I put in, which was $3600 or more." Afterwards he consulted his attorney. He further testified that at the time he took out the policy, or previous thereto, during the negotiation for it, that the agent "showed me some papers and circulars and I think he had a little book that he showed me some figures in, that he used to carry with him." Defendant's counsel

then showed the witness a book called a "manual" which was afterwards introduced in evidence and plaintiff was asked if that was the book the agent had and plaintiff replied that he did not know but it was the same kind of a book but he did not think he could remember the figures. Plaintiff gave no other description of the papers and circulars shown him or of the little book he referred to in his testimony.

However, defendant showed by its assistant secretary and actuary that during the time the application for this insurance was being taken the agents were furnished with literature which consisted of, first, a small book or manual. A page of this manual which contains figures in relation to a policy of this kind is shown in evidence. Under the head "bonus options" were contained the words "N. B. All values based upon the bonus are estimates." A little below is a clause to the effect that the policy might be surrendered and the reserve of $394 taken in cash together with a bonus in cash of $408; then follows the words "probable final value $802." These were estimates made upon a policy of $1,000 and by multiplying the "probable final value" of $802 by five (the policy in suit being for $5,000) the amount of $4010, which is contained in the typewritten slip, may be arrived at. The evidence also shows that defendant issued a printed paper called an "estimate sheet" in which soliciting agents were authorized to insert in blank spaces provided therefor the probable value or the estimated value of the policy at the end of the bonus period. This information was to be secured from the manual. It also issued "estimate cards" in which blank spaces were left to insert the estimated future values of policies of the kind in question.

Defendant also issued a printed leaflet or circular to be used by such agents in which the company presented to the public its "guaranteed income policy" and stated that it was the company's belief that "It will meet the requirements of those who wish not only to protect their families during the years of their dependence, but also to lay up for themselves something which may be used to

enhance the comforts and luxuries that will be so acceptable as old age creeps on them." It then goes on to say that the entire legal reserve is guaranteed in cash to be paid at the end of the bonus period and recites that, "Furthermore, the policy provides that the bonus *to be apportioned thereto at the end of the bonus or dividend period* may either be withdrawn in cash; or used to purchase additional paid-up insurance; or used to increase the amount of the annuity on the life of the insured." (Italics ours.)

The company ceased to write this form of insurance after the year 1905. All of the literature, including the manual, circular, estimate sheets and estimate cards had been destroyed and none of this except the manual and the leaflet referred to is shown in the record, but the uncontradicted evidence shows that all of this literature contained the positive statement that any figures that were used were merely estimates of the bonus to be earned by the policy. From a reading of the manual it is apparent that plaintiff could not have seen the figures contained therein without also seeing and reading the language "All values based upon the bonus are estimates." It was evidently a manual of this kind that plaintiff was shown by the agent. However, every book issued by defendant contains the information that the figures contained therein were merely estimates.

It will be borne in mind that plaintiff does not testify that he was promised the sum of $4010 in cash by the soliciting agent. He testified that he was promised an amount equal to or more than the amount of premiums he was to pay. It is apparent from plaintiff's testimony that he did not rely upon the typewritten slip attached to the policy; that it was not the amount stated therein that was promised to him that he would receive but it was represented to him that he would get back as much or more than he paid in on the policy and the amount he paid in was approximately $3600. In no event could there be a recovery of more than $3600. Plaintiff, therefore, was not relying upon the representations contained

in the typewritten slip but upon those made to him by the agent at the time the application was taken and prior to the execution or delivery of the policy.

This is a suit at law and it is not an action to recover the amount promised to the plaintiff by the local agent at the time the application for the insurance was made. The cause of action pleaded in the petition is based upon the policy and nothing more. The reply attempts to raise an issue of misrepresentation and estoppel. The evidence fails to prove the allegations of the reply. As before stated, all that plaintiff claimed that had been represented to him was that he was to receive as much as he was to pay in on the policy in the way of guaranteed reserve plus the surplus or bonus. There is nothing in his testimony tending to show that he was promised the sum of $2040 as bonus or $4010 in the way of reserve and bonus or surplus. The issue attempted to be raised by the reply has for one of its essentials that plaintiff relied upon the slip and the representation that he was to receive $4010. His testimony negatives this. When the time of settlement came he stated that he was promised what he put in or more, not that he was promised $4010, the figures contained in the slip. He did not at any time testify that he relied upon the slip or was promised the amount contained therein but that he relied upon what the agent told him, which, as we have stated, was that he was to receive as much or more than he had paid the company in the way of premiums. The agent had no authority to make any promise to plaintiff; he was not a general agent and all of the literature the company placed in his hands to be used shows upon its face that the surplus or bonus was estimated and was to be apportioned at the end of the twenty-year period. The agent was not instructed not to paste or attach the estimate sheet and like literature to the policy, defendant's executive officer testifying that no one ever dreamed that the agent would do such a thing, and evidently no slip or "sheet" emanating from defendant was attached to this policy as all of its literature contained the informa-

tion that the matter covered therein was merely an estimate.

The evidence shows that defendant had a method of apportioning the amount of surplus on policies of this character that was approved by the agent of the Insurance Department of the State of New York and that the amount apportioned to all policies of this character that matured during the month in which plaintiff's policy matured was less than $2040, the amount of surplus mentioned in the typewritten slip. However, the evidence does not go as far as to show the amount apportioned to plaintiff's policy.

Defendant insists that there is evidence consisting of two letters, one introduced in evidence and one it unsuccessfully attempted to introduce, which shows what the amount apportioned to plaintiff's policy was, and that this amount was $100.95. However, these letters, one incompetent for any purpose and the other competent for another purpose and which contains this information, were merely hearsay evidence as to the amount apportioned to plaintiff's policy. The best evidence as to the amount apportioned was the record of the actuary made in computing the "preliminary basis," the resolution of the finance committee apportioning the surplus, and the records of the board of directors approving the action of the finance committee, which were not shown although the evidence the defendant did introduce tending to prove the amount which was apportioned to all policies that matured during the month in which plaintiff's policy matured, shows that this amount was arrived at by the proving of these things.

There being no evidence as to the amount actually due plaintiff as surplus or bonus under his policy, we will not reverse the case outright as plaintiff may desire to amend his petition so as to ask for the bonus or surplus actually earned. Of course we are not attempting to pass upon the question as to whether the method of apportionment adopted by defendant was a proper one as

this is a law case and that issue is not now in the case and no question is raised in reference to the matter.

The judgment is reversed and the cause remanded. All concur.

### ON REHEARING.

BLAND, J.—After carefully reviewing this case for the second time we are still of the opinion that there was no authority in the agent who solicited the insurance to attach the rider to the policy, but that he was prohibited from doing so and that there was no holding out by the defendant of the agent as having authority to attach the rider. We are also of the opinion that the record wholly fails to show that plaintiff relied on the representations claimed to have been made to him by the agent and that he was induced to take out the policy by reason of such representations. Under such circumstances the rider was no part of the policy and no right can be claimed by plaintiff under it.

However, defendant's demurrer to the evidence was properly overruled as we are of the opinion that the pleadings are broad enough to permit a recovery of the bonus actually earned. The petition is a suit upon the policy, a verified copy of which is attached to the petition, and while the petition pleads *in haec verba* that part of the policy containing the rider, it further pleads that at the end of the bonus period mentioned in the policy plaintiff "was entitled as a cash option the payment due him by defendant upon the terms of said policy in the sum of $4010." This allegation is general and is not confined to or made under the terms of the policy as set forth in the rider alone but is broad enough to refer to the terms of the policy as a whole. Defendant recognized that the suit was upon the whole policy and not solely upon the rider, for as a part of its defense it pleaded that it had calculated the bonus or surplus under the terms of the policy and that such sum was $100.95 and was the correct amount due, which defendant tendered in the answer.

While the declarations of law and findings of fact

given and refused show that the court decided for plaintiff upon the theory set up in plaintiff's reply, which, as we have said, there was no evidence to sustain, the material evidence is undisputed and the decision of the case rests entirely upon a question of law. If the decision of the lower court can be sustained upon any theory, it is our duty to uphold it. As we stated in the original opinion, the evidence shows that defendant issued a rate book with estimates therein of what the policy would earn in the way of bonus; also sheets or slips and cards containing blank spaces for like estimates which soliciting agents were authorized to fill in from figures contained in the rate book. This literature, together with the circular which is mentioned in the original opinion, was authorized to be used by agents in soliciting insurance. This rate book was introduced in evidence. Disregarding the rider, the policy proper provides for the payment of a bonus to be apportioned at the end of the twenty-year period, which might be withdrawn at that time in cash. The application, made a part of the policy, also provided "that in any distribution of bonus, profit or surplus the company's method and determination of the amount to be apportioned to any policy issued hereon is hereby ratified and accepted." As was stated in Thomas v. Equitable Life Assurance Society, 198 Mo. App. 533, 541—"Now that showing (the estimate) *was of some probative force.* The true amount was wholly unknown to plaintiff, but was fully known to defendant. It had data at hand from which it could, at any moment, furnish complete information." (Italics ours.)

And it was held that the burden was upon defendant to show the true amount if it meant to dispute the estimate. It is further said in that case at l. c. 542—"The surplus arising on a policy like this is, as we have said, a trust fund in the hands of the insurance company. It is the duty of such companies to keep a record of it, and it is common knowledge that they have a system, evidenced by their books, whereby they keep trace of its growth as well as its decline, so that they may at the proper time for

accounting to the policy-holder render to him, or produce to the court, a statement showing the fact. [Equitable Life Assurance Society v. Winn, 137 Ky. 641, 648.] It would be unjust as it is absurd to say that an insurance company may apportion an arbitrary amount as the surplus and when its correctness is questioned, to allow it to hide the fact by refusing to produce the evidence showing such fact.''

Defendant wholly failed to produce the evidence necessary to ''show what was due under it (the policy)—how ascertained, and from what sources.'' [Thomas v. Equitable Life Assurance Society, supra, 538.] That defendant has not done this is fully shown in the original opinion filed in the case. Defendant asks us to overrule the Thomas case. While the writer hereof dissented in that case and is not now convinced that he was wholly wrong, he has long since acquiesced in the majority opinion; that opinion became the law and the writer hereof sees no good reason to agitate the question.

The judgment is affirmed. All concur.