HOWARD H. HAWES, RESPONDENT, v. AMERICAN CENTRAL INSURANCE COMPANY, APPELLANT.*

Kansas City Court of Appeals. June 11, 1928.

1058

*Corpus Juris-Cyc References: Evidence, 22CJ, section 36, p. 96, n. 92; section 40, p. 99, n. 13; Fire Insurance, 26CJ, section 35, p. 46, n. 18; p. 47, n. 19; section 402, p. 324, n. 93; section 406, p. 325, n. 24; section 780, p. 566, n. 82; Insurance, 32CJ, section 34, p. 999, n. 64; section 134, p. 1058, n. 30; section 142, p. 1065, n. 16.

*M. A. Fyke* and *Davis & Ashby* for appellant.

*John H. Taylor, John S. Boyer* and *C. C. Crow* for respondent.

FRANK, C.—This is an action on an oral contract of fire insurance. There was a verdict and judgment in favor of plaintiff in the sum of $3820 which included an attorney's fee of $400, and defendant has appealed. The petition alleges in part that on April 11, 1924, defendant through its agent, W. R. Stepp, of Livingston county, who had authority to make contracts of insurance and to issue and countersign such contracts for and in behalf of the defendant, orally agreed with plaintiff, for and in consideration of $130.60 premium paid by plaintiff to defendant, to insure and did insure, plaintiff in the sum of $3265 against damage by fire for a period of five years, commencing on the 11th day of April, 1924, and ending on the 11th day of April, 1929.

The facts show that defendant is a domestic fire insurance company with the principal office in the city of St. Louis; that some time prior to March 1, 1924, one William E. Myers was the owner of a small farm near the city of Chillicothe which had upon it a house and barn. Through his agent, one W. R. Stepp, who was in the real estate and insurance business at Chillicothe, Myers negotiated a contract for the sale of the property to plaintiff. During the negotiations for the sale, it was discovered that Myers' fire insurance on the property was about to expire and Stepp solicited him to have it renewed in the defendant company for which Stepp was agent. An application was signed by Myers, and the defendant, at its head office in St. Louis, issued a policy of fire insurance upon the houre and barn on the premises, dated March 1, 1924, and expiring March 1, 1929. Myers did not pay the first year's premium of $22 for the reason that it was understood between him, plaintiff and Stepp that plaintiff was to have the insurance when the contract of sale was consummated. The contract of sale was entered into on March 1, 1924, to be consummated on March 15, of that year. A warranty deed to the property was delivered by Myers to plaintiff on March 14, 1924.

On April 11, 1924, Myers and plaintiff went to Stepp's office. Plaintiff testified that at this time they asked Stepp to have the insurance policy transferred from Myers to plaintiff; that the policy was in Stepp's possession and that plaintiff at no time saw it. Stepp told plaintiff that the latter should have insurance upon his household goods, the Myers policy insuring only the house and barn, the house being insured in the sum of $2000 and the barn in the sum of $200. Plaintiff further testified that he acquiesced in this suggestion and Stepp stated that instead of transferring the Myers policy to him he would send it back and have a new policy issued covering all things, having it all in one policy, and that Stepp told him that he "could rest assured that the insurance would be in effect from that day on." The insurance on the household goods was to be for $1000. Plaintiff testified that he did not ask Stepp for a policy on that day but that he expected to get one. He was asked if he did not know that Stepp had no power to issue a policy and he replied, "I had no way of knowing what his power was."

Plaintiff testified that at this interview on April 11th he paid Stepp $22, which was the premium for the first year on the *Myers* policy; that the whole premium for plaintiff's insurance was to be $32.75 for the first year and that the difference between that sum and the $22 represented the additional amount necessary to insure the household goods. At the time of the conversation in question, Stepp executed a written receipt to plaintiff as follows:

"Bazel J. Meek Land Company,

"Chillicothe Mo.  April 11, 1924.
"H. H. Hawes to American Central Ins. Co.                    Dr.
    "Insurance Premium for 1 yr. ...................$32.75
    "by payment ............................... 22.00
                                                    ─────
                                                   $10.75
                                    "W. R. Stepp, Agt.
                                          "4-11-24."

Plaintiff testified that he was a little short of money that day and agreed to pay the $10.75 some day in the future when it would be convenient for him to do so. Plaintiff moved upon the premises in question on April 4th and on April 12th Stepp came to plaintiff's residence and procured from him a note in the sum of $128, payable in four annual installments. This note represented the balance of the premium upon the alleged contract of insurance with plaintiff.

On cross-examination plaintiff testified that the time the new insurance was agreed upon with Stepp on April 11th, he did not think the latter said anything about canceling the policy 'but said it would be better to have it all in one policy. "Q. Get you a policy, that is the way you understood it? A. Yes;" that Stepp did not tell him that an application would have to be sent into the St. Louis office of the company; that he did not know that such an application would have to be sent but that Stepp said something about the company's office in St. Louis and talked about sending the premium note to the company; that he did not ask Stepp to issue a policy then and there but Stepp told him that his "insurance was in force from that day;" that the policy was never transferred to him and that he never received any policy.

Stepp's version of the transaction with plaintiff on April 11th is as follows: That it had been understood that the policy was to be transferred to plaintiff when he obtained title to the Myers property and that plaintiff came into his office on April 11, 1924, and paid him $22, representing the first annual premium on the Myers policy, and then asked him to write an additional $1000 on the household goods and insurance on some other items consisting of live stock; that he told plaintiff that—

". . . since this original policy had only been in effect such a short time. that I would send what is known as the Myers policy in and have it rewritten in his name including the additional amounts that he wanted, which I did."

Stepp further testified that he did not remember whether he told plaintiff that his policy would take effect before it was sent in to St. Louis; that he did not remember whether he told plaintiff "about sending it to St. Louis for the policy;" that he understood that

plaintiff was wanting to insure his property but that he did not issue a policy at that time because that was not "my custom, not my, manner of handling insurance;" that he never himself issued a policy for this defendant; that the services he performed for the defendant were soliciting business and sending in applications for policies to be issued by the St. Louis office; that the policies would be returned to him and he would countersign and deliver them; that, before they were countersigned by him they were signed by the president and Bray who was the manager at St. Louis of the Farm Special Service Department of the defendant. The court over the objection of defendant, refused to permit the witness to state whether he had at any time made an oral contract of insurance for the defendant.

Stepp testified that the $22 paid by plaintiff to him was on the Myers policy in accordance with the agreement had with Myers and plaintiff that the latter was to pay the premium in case the contract of sale for the place was consummated; that he made no attempt to transfer the Myers policy to plaintiff but sent it to defendant to have it make the transfer; that he told plaintiff that he was "going to send it out and have a new policy issued . . . to Mr. Hawes in lieu of this policy . . . and that was what I tried to do." He testified that he did not remember whether he told plaintiff that he "could rest assured that he was insured from that day on;" that he always thought he had insured plaintiff, that the insurance was effective from the 11th day of April, 1924, and that it was a good risk.

It appears that after the conversation above detailed, Stepp, without plaintiff's knowledge, made a notation on the Myers policy, which was in his possession, showing what plaintiff's policy should be, leaving the $2000 on the house and $200 on the barn and inserting the name of H. H. Hawes in the place of W. E. Myers and the figures "75" after item two, which insured one cow, and the figures "$1000" after item ten, insuring household and kitchen furniture. Stepp testified that he made the notations on the Myers policy in order to show what plaintiff stated he wanted in the way of insurance; that he mailed the policy with these notations upon it to a Mr. Crist, defendant's special agent at Huntsville, with information as to what was wanted in the way of a new policy for plaintiff, inclosing in the letter plaintiff's premium note in the sum of $128. It seems that Crist was out of town at the time Stepp's letter arrived and he did not send the policy and the premium note to the defendant at its head office in St. Louis until April 26th. Defendant's witness Bray testified that the policy and note were received by the defendant at St. Louis on April 28th and on that day defendant returned the premium note to plaintiff in a letter which informed him that the policy would be issued on farm property only upon a signed appli-

cation of the plaintiff. On April 27, 1924, the dwelling house and household furniture were totally destroyed by fire. Defendant's officer in St. Louis who had such matters in charge did not know at the time this letter was written to plaintiff that the property in question had been destroyed. The first information defendant had of the fire was when Stepp, on April 28th, wrote defendant concerning it. On May 15, 1924, defendant canceled the Myers policy and returned to him his premium note in the sum of $88, representing the premium for the last four years, which he had given at the time his policy was written, and refunded to him the sum of $13.42, which represented the unearned first year's premium upon his policy. As soon as the defendant at St. Louis received knowledge that plaintiff had paid the $22 on the Myers policy, which was about two weeks before the trial, it made due tender of the said sum of $13.42 to plaintiff through his duly authorized agent and attorney and has kept said tender good, but said tender of said sum of money was refused.

Plaintiff introduced in evidence the requisition made upon the insurance department of the State of Missouri for a license to be issued by the State to Stepp as one of defendant's agents. This requisition reads as follows:

"Requisition: This is to certify that the American Central Insurance Company of St. Louis, Missouri, has appointed W. R. Stepp of Chillicothe, Missouri, agent for the transaction of its authorized business of insurance in the State of Missouri for the term ending February 1, 1926.

"Dated at St. Louis, Mo., this 1st day of February, 1924,

"Signed by Harold M. Hess, Secretary,

"Street No. 408 Pine Street.
                              "February 27, 1924."

A certificate, or license, was duly issued upon this requisition.

Defendant's officer, Bray, testified that the duties performed by Stepp for the company were taking applications and submitting them to the company at St. Louis for approval; that when new policies were issued, Stepp delivered them and collected the premiums and forwarded the latter to defendant at St. Louis. On cross-examination he was asked whether he knew that Stepp signed policies for defendant as its agent and he answered, "I know that he could do so but it was not required of him;" that he knew that Stepp actually did sign such policies as agent of the defendant; that he had seen policies so signed by Stepp. On re-direct examination he was asked—

"Q. Now, Mr. Bray, Mr. Boyer asked you the question if Mr. Stepp signed policies and you said that you had seen policies signed

by him. I will have you to state if Mr. Stepp countersigned policies or executed them for the company? A. No, sir.

"Q. Who did execute policies for the company? A. I did.

"Q. Did Mr. Stepp ever execute any policy for the company? A. No, sir."

Under the written appointment of Stepp as defendant's agent, made on February 6, 1923, he was referred to as "surveying agent" and the authority conferred upon him therein was to take applications for insurance, deliver policies executed by the company and collect premiums therefor, and to do such other things pertaining to his appointment which the company might authorize him to do.

It is insisted by plaintiff that all of these facts show that plaintiff "was insured from April 11, 1924, to the 1st day of March, 1929." Defendant contends that its demurrer to the evidence should have been sustained, and in this connection insists, (1) that there was no contract of insurance made between Stepp and plaintiff as the "duration" of the insurance is not shown; (2) that if there was any contract at all made in reference to insurance, it was an oral contract to issue an insurance policy and not a contract of present insurance; and (3) that it was not shown that Stepp was such an agent of the defendant as could orally enter into a contract of insurance. Plaintiff, however, contends that Stepp was either a general agent of the defendant when the conversation was had between him and plaintiff on April 11th, or that the company permitted him to hold himself out as such an agent, and that plaintiff had no knowledge or information that he was not its general agent.

The agency contract between defendant and Stepp was evidenced by the written appointment which we have described. It certainly does not constitute Stepp a general agent of the defendant and does not confer upon him authority to make oral contracts of insurance, in fact, plaintiff admits that this contract limited Stepp's authority and that under it he had no power to make such a contract as the one sued upon. However, plaintiff contends that this was a "secret" agreement between defendant and Stepp of which plaintiff had no knowledge. To show Stepp's apparent authority in the premises, plaintiff relied upon the "requisition" made by defendant on the Insurance Department of the State for the licensing of Stepp as its agent, the testimony that Stepp countersigned insurance policies, and the fact that the Myers policy was countersigned by Stepp as agent when it was issued.

The making of the requisition by the insurer was done under the provisions of sections 6308 and 6321, Revised Statutes 1919, requiring a certificate or license from the insurance department for insurance companies and their agents to do business in this State. These sections of the statutes refer to "agent" and "solicitor" but

make no effort to classify agents and do not provide that agents be licensed under any classification or that the requisition for the license or certificate shall designate in what capacity the agent is to act or what powers he should have. It was, therefore, unnecessary for the defendant, in making the requisition for the licensing of Stepp, to designate in particular the kind of agent he was to be, and we do not think that he was so designated in the requisition shown in the record. It is claimed by plaintiff that this requisition shows that defendant had appointed Stepp as a general agent, but the requisition does not so state. It does not say that he was appointed agent for the transaction of *all* of defendant's authorized business of insurance in the State of Missouri but "merely its authorized business of insurance," etc. What part of its authorized business he was appointed to transact is not disclosed upon the requisition. For all the record shows, this requisition might have been made upon a blank furnished by the insurance department for the purpose, merely of a general licensing of agents under the provisions of the statute, with no thought of designating what kind of agent the party sought to be licensed should be or what powers he should have.

An agent who is merely authorized to solicit insurance, take applications, deliver policies and collect premiums is without power to make oral contracts of insurance (Rhodus v. Ins. Co., 156 Mo. App. 281; 26 C. J. 42, 289; I and VI Cooley's Briefs on Insurance, pp. 347, 404, 418; Punton v. Ins. Co., 213 Mo. App. 49, 52, 54) but if he issues, countersigns or makes contracts of insurance himself, then he is deemed to have such authority in the absence of notice, actual or constructive, to the contrary to parties dealing with him. [Beswick v. Nat'l Casualty Co., 226 S. W. 1031; Kring v. Ins. Co., 195 Mo. App. 133, 136; Trask v. The German Ins. Co., 53 Mo. App. 625; Banks v. Clover Leaf Casualty Co., 207 Mo. App. 357; Brownfield v. Ins. Co., 26 Mo. App. 390; Salisbury v. Live Stock Ins. Co., 202 S. W. 412; 32 C. J. 1036.]

"The rule is well settled that an insurance company is bound by all acts, contracts, or representations of its agent, whether general or special, which are within the scope of his real or apparent authority, notwithstanding it is in violation of private instructions or limitations upon his authority, of which a person dealing with him, acting in good faith, has neither actual nor constructive knowledge." [Cline v. Fidelity Phenix Fire Ins. Co., 203 N. W. 578, 579.] [See, also, 32 C. J. 1066.]

There is no testimony that defendant permitted Stepp to issue, countersign or make contracts of insurance. It is true there is testimony that he signed policies of insurance for the defendant as agent and that he "countersigned" such policies, and that the policy

that was issued to Myers was ''countersigned'' by him. But the undisputed testimony show that it was unnecessary for him to countersign policies in order to give them validity. The Myers policy recites—

''. . . this policy shall not be valid unless countersigned by the manager of its farm department at St. Louis, Mo., who alone shall have power or authority to waive or alter any of the terms or conditions of this policy, or to make or attach endorsements hereon.

''HAROLD M. HESS, Secretary,

''B. G. CHAPMEN, JR., President.

''Countersigned at St. Louis, Mo., this 1st day of March, 1924.

''A. O. BRAY,

''Manager Farm Department.

''Countersigned at Chillicothe By W. R. STEPP, agent.''

The only provision in the Myers policy concerning the countersigning of that policy, was that it should be so executed by the manager of defendant's farm department at St. Louis. It was so countersigned by him. The ''countersigning'' of the policy by Stepp was entirely unnecessary to give it validity. The reason that an agent is said to have apparent authority to make an oral contract of insurance when he has been given authority to countersign policies, is because when it is necessary for the contract to be countersigned by such agent in order for it to be put in force, such countersigning under such circumstance amounts to the issuance of the policy by the agent, it being one of the necessary things to be done to give the policy validity, and usually the last thing. The authority to countersign such policies under such circumstances is tantamount to authority to issue policies because the authority to countersign policies is exercised only by agents with general powers, and it is held that such an agent has authority to execute oral contracts of insurance unless his actual authority is restricted so that he has no such right and such limitation of his powers is brought home, actually or constructively, to the persons dealing with the agent. [32 C. J. 1066; 26 C. J. 287.]

The ''countersigning'' of the policies that Stepp was permitted to do by the defendant in the case at bar, was not of the character of countersigning that is referred to in the cases that we have cited. The evidence shows that he was merely permitted to sign the policies as agent; that he was not required to do so and that his act in so doing did not affect the validity or the going into force of the policy in any manner. There is no showing that he ever countersigned a single policy which provided for its countersigning by a local agent or such an agent as he was. Plaintiff, therefore, failed to show that Stepp had any authority in the premises more than an ordinary soliciting agent with power to take applications, deliver

policies and collect premiums, which does not include the power to make contracts of insurance such as is sued upon in this case. Nor has plaintiff shown that defendant has held Stepp out as an agent having such a power. Plaintiff, therefore, wholly failed to show a valid oral contract of insurance with defendant. Having come to this conclusion, it is unnecessary for us to pass upon defendant's contention that plaintiff knew that Stepp could not enter into a contract of insurance because the latter did not issue a written policy in this case but told plaintiff, in effect that he would send the old policy to the company at St. Louis for a new policy to be issued by it there.

Plaintiff insists that Stepp's act in collecting the premium was the act of the defendant and his knowledge that a premium had been paid was defendant's knowledge. This would be true if Stepp had been acting within the scope of his authority at the time he collected the premium. A principal is bound by the act of its agent while acting within the scope of his authority, but when the agent steps outside the line of his duty and performs acts not within the scope of his authority, such acts do not bind the principal. While Stepp had authority to collect premiums on contracts of insurance authorized by defendant, he had no authority to make an oral contract of insurance, or collect a premium on a contract which he, without authority attempted to make. This being true, it must follow, that Stepp's act in collecting the premium was not the act of defendant, and his knowledge that a premium had been paid by plaintiff, cannot be imputed to defendant.

Plaintiff makes the further contention that defendant cannot claim that no contract of insurance was made without first tendering back the premium it received on the alleged contract. In support of this contention plaintiff insists that on the record made, it was a question for the jury and not for the court to say whether or not defendant did tender back the premium received by it on the alleged contract of insurance.

The evidence is that plaintiff paid defendant's agent, Stepp, the first year's premium and executed his note in the sum of $128 payable in four annual installments in payment of the premium for the remaining four years. Defendant's general agent, Bray, testified that the defendant received this note at its head office in St. Louis on April 28th and on that day returned the note to plaintiff in a letter which informed him that no policy would be issued to him until he signed a written application therefor. Plaintiff testified that he did not receive any such letter and had not seen the note since the day he signed it.

The evidence of defendant's agent, Bray, that a letter containing plaintiff's note was mailed to him on April 28, 1924, the same day

it was received, raises a presumption that plaintiff received the letter containing the note. [Clark v. Cole County, 197 S. W. 905; 272 Mo. 135; Scheidel Western X-Ray Co. v. Bacon, 201 S. W. 916; Price Brokerage Co. v. Chicago, R. I. & P. Ry. Co., 230 S. W. 374, 207 Mo. App. 8.] The presumption raised by this evidence is, however, a rebuttable one, an in the face of the positive evidence of plaintiff that he did not receive the letter, we cannot say, as a matter of law, that he did receive it. [Fleming v. Anderson, 232 S. W. 718, 723, 724.] Evidence that plaintiff did not receive the letter was some evidence that it was not mailed, and made it a question of fact for the jury to say whether or not the note was returned to plaintiff.

The note was executed by plaintiff and delivered to defendant in payment of the balance due on the premium on the alleged contract of insurance. Defendant cannot keep the note and at the same time claim there was no valid contract of insurance.

Defendant contends that the court erred in giving plaintiff's instruction No. 6.

The first paragraph of this instruction sets out the contentions of plaintiff and defendant. The second paragraph told the jury that if it found from the evidence that Stepp was the agent of defendant and within the apparent scope of his authority the plaintiff contracted and agreed with him for insurance and that the plaintiff had no knowledge of any limitations upon the authority of said agent, then plaintiff was not bound by any limitations which defendant might have put on the agency of said Stepp. We have already determined that there was no evidence that Stepp was acting within the apparent scope of his authority at the time the alleged contract of insurance was made. For this reason the instruction should not have been given.

Appellant's next contention is that error was committed in the giving of plaintiff's instruction No. 3 and in refusing defendant's requested instruction "c."

These instructions relate to the question of defendant's vexatious refusal to pay plaintiff's loss. The complaint against the court's action in giving and refusing these instructions is that there was no evidence of a vexatious refusal to pay.

Defendant denied liability from the beginning. There is evidence that the defendant did not tender or offer to return the premium note. Evidence that defendant retained the premium note although it claimed there never was any contract of insurance, is evidence which would justify a jury in finding that the refusal to pay was vexatious. [Avery v. Mechanics Ins. Co. of Philadelphia, 295 S. W. 509, 515 and the cases cited.] We rule this contention against appellant.

If defendant failed to return to plaintiff the premium note, plaintiff would be entitled to recover, but we cannot affirm the judgment on that ground because the case was not tried on that theory and that

issue was not submitted to the jury. However, as there is evidence tending to show that defendant did not tender back or offer to return the premium note, the case should not be reversed outright.

For the errors noted, the judgment is reversed and cause remanded. *Williams, C.,* concurs.

PER CURIAM:—The foregoing opinion by FRANK, C., is hereby adopted as the opinion of the court. All concur, except *Trimble, P. J.,* absent.