REATHA HILL v. METROPOLITAN LIFE INSURANCE COMPANY, A CORPO-
RATION.—185 S. W. (2d) 76.

Kansas City Court of Appeals.   December 4, 1945.

*William C. Michaels* and *Robert E. Coleberd* for appellant.

*Harry Cole Bates, Arthur W. Rogers* and *Michaels, Blackmar, New-kirk, Eager & Swanson* of counsel.

*A. M. Mansur* and *White & Hall* for respondent.

CAVE, J.—This is a suit upon an alleged oral contract of life insurance purporting to insure the life of Ocal Hill, in the sum of $1000, payable to his wife, Reatha Hill, as his beneficiary. Trial to a jury resulted in a verdict and judgment for plaintiff in the sum of $1000, and $500 attorneys' fee. Defendant appeals.

The parties will be referred to as they were in the trial court, plaintiff and defendant.

The record discloses that the defendant is a New York Corporation, and that it made application to the Missouri Insurance Department for a license to transact its business in this state, and that department issued to it the standard authority to "do the business of life, accident and health insurance in the State of Missouri." The defendant appointed one James F. Marshall of Richmond, Missouri, as its agent "for the transaction of its authorized business of insurance in the state of Missouri." This appointment was filed with the Superintendent of Insurance, which department issued a license licensing the said Marshall as agent of the defendant company.

On December 28, 1942, and within the period covered by his appointment as agent, Marshall solicited Ocal Hill at Richmond, Missouri, for a life insurance policy. Hill signed an application, but did not pay the first monthly premium of $2.93. He advised Marshall to call at Ogg's restaurant, in Richmond, Missouri, where the plaitniff, his wife, was employed and she would pay the premium. Later that day Marshall called at the restaurant, and plaintiff's version of the occurrence and conversation is:

"Q. What did Mr. Marshall say when he came to see you? A. He came in and he says, 'Your husband took out some insurance and I came to collect for it, . . . and I said, 'How much is it?' He says, 'a thousand dollars,' and he told me to collect for it, and I said, 'How much is it', and he said, '$2.93', and I went to get my purse and while I was getting that he was reading me a slip and he said—I said, 'when does this take effect' and he says, 'Right now.' He gave me the receipt and I gave him the $2.93. . . . 'He said it was made to me. . . . He said the premium was $2.93 a month. . . . He said when I paid him, it would take effect then.' . . . He gave me the receipt and then I gave him the $2.93, and he says, 'This takes effect right now.'"

The material part of the receipt, which the agent read and delivered to her, is:

"Received from Ocal Hill, applicant, two and 93/100 dollars, on account of application made this date to the METROPOLITAN LIFE INSURANCE COMPANY. *If the sum collected at the time the application is signed is equal to the full first premium on the policy applied for and if such application is approved at the Company's Home Office for the class, plan and amount of insurance therein applied for, then the insurance applied for shall be in force from this date,* but otherwise no insurance shall be in force under said application unless and until a policy has been issued and delivered, and the full first premium specified in the policy has actually been paid to and accepted by the Company during the lifetime and continued insurability of the applicant. The above sum shall be refunded if the application is declined or if a policy is issued other than as applied for and is not accepted by the applicant. . . ."

Mr. Hill died on January 11, 1943.

Part "A" of the application, which was signed by Mr. Hill on December 28, 1942, concerned his name, age, business, amount of insurance applied for, beneficiary, amount of premium and the manner of its payment.

The record further discloses that the application was forwarded by agent Marshall to the Sedalia, Missouri, District Office of the defendant and checked for errors. It was then returned from the Sedalia Office to Dr. T. F. Cook at Richmond, who was defendant's medical examiner, and also plaintiff's family physician. On January 5, 1943, Mr. Hill was taken to Dr. Cook's office by Marshall, where he was examined, and parts "B" and "C" of the application were filled out by Dr. Cook who attached a typewritten letter to the application, concerning a certain illness of Mr. Hill.

The application was then forwarded to defendant's office in New York City and reached there January 11, 1943. It was examined January 12, 1943, and declined for the reason that the application revealed that Mr. Hill had been sick in December, 1941, due to heart

disease, which had been in existence six or eight months, and that he had been treated for heart disease and Angina Pectoris in the University of Kansas Hospital Clinic in December, 1941. No written policy was issued by the defendant. Within a few days after Mr. Hill's death the agent, Marshall, saw Mrs. Hill and tendered to her the premium of $2.93, which she refused to accept. Prior to the trial of the case the premium, together with accrued interest thereon, was deposited with the clerk of the circuit court.

Plaintiff contends that Marshall was a *general agent* of the defendant and "had authority to enter into oral contracts of life insurance", and that the evidence shows he did enter into such a contract. Defendant contends the contrary.

To support her contention that Marshall was a *general agent* of defendant, with full power and authority to make an oral contract of life insurance, plaintiff offered in evidence the Certificate of Authority of the insurance department of this state, which authorized the Metropolitan Life Insurance Company "to do the business of life, accident and health insurance in the State of Missouri, until the 1st day of March, 1943." After the issuance of that Certificate of Authority, the company filed with the Superintendent of Insurance a Requisition reciting that it had "appointed James F. Marshall . . . of Richmond, Missouri, agent for the transaction of its authorized business of insurance in the State of Missouri for the term ending March 1, 1943." When this Requisition was filed with the superintendent he issued an agent's license to Marshall, the material part of which is: "Whereas the Metropolitan Life Insurance Company . . . is authorized until March 1st, 1943, to transact the business of insurance in this state in accordance with Certificate of Authority issued to said company, a true copy of which Certificate of Authority is printed on the reverse side hereof: Therefore, I, the undersigned Superintendent of Insurance of the State of Missouri, in pursuance of instructions received from said company, do hereby license James F. Marshall of Richmond, Missouri, as agent of said company in this state until March 1st, 1943, unless sooner revoked. . . ."

Plaintiff does not contend that Marshall held himself out to the public as a general agent, or that the defendant did any thing or act which would justify the public in believing Marshall was a general agent other than the above appointment as an agent. There was no evidence showing a course of conduct or dealing on the part of Marshall and defendant which implies such authority.

Plaintiff contends that when the Superintendent of Insurance licensed the defendant "to do the business of life, accident and health insurance in the state of Missouri; ". . . and when, under that authority, the defendant appointed James F. Marshall as "agent for the transaction of its authorized business of insurance in the State

of Missouri . . . "; then under certain statutes and decisions, hereafter to be considered, Marshall became a *general agent* of the defendant with full authority to transact *any business* which the company itself was authorized to transact.

Defendant's evidence does not aid plaintiff's case on this issue; it is to the contrary and to the effect that Marshall was merely a soliciting agent and had no authority to make an oral contract of insurance binding the defendant.

To support her contention plaintiff relies upon Sections 6013, 6003, 5844 and 5034, Revised Statutes Missouri 1939, and certain decisions construing those sections. The material part of said sections are:

Sec. 6013. *"Foreign companies* admitted to do business in this state shall make contracts of insurance *upon property or interests therein* only by lawfully constituted and licensed resident agents, *who shall countersign all policies so issued. . . . "*

Sec. 6003. "No company shall transact in this state any insurance business unless it shall first procure from the superintendent of the insurance department of this state a certificate stating that the requirements of the insurance laws of this state have been complied with authorizing it to do business; a copy of which certificate, certified by the superintendent, and issued only upon the request of the president or secretary, or other chief officer of the company, or of a general agent of the company for this state, notice of whose appointment has been filed in the department, shall be held by every *agent or solicitor* for such company doing business for such company within this state, and such copy shall, in some convenient and distinct manner, set forth the name of the person, agent or solicitor for whose use it is issued. . . . Every such company shall be required to procure annually for the use of its *agents and solicitors,* copies of the renewed Certificate of Authority provided for by law." (Italics ours.)

Sec. 5844. ". . . Any person who shall solicit an application for insurance upon the life of an other shall, in any controversy between the assured or his beneficiary and the company issuing any policy upon such application, be regarded as the agent of the company and not the agent of the assured, . . . "

Sec. 5034. "Parol contracts may be binding upon corporations if made by an agent duly authorized by a corporate vote, or under the general regulations of the corporation; and contracts may be implied on the part of such corporations from their corporate acts, or those of an agent whose powers are of a general character."

Plaintiff also cites the following decisions as supporting her contention that under the evidence Marshall was a general agent with full power and authority to enter into oral contracts of life insurance. [Murphy v. Great American Ins. Co., 285 S. W. 772; Foursha v. American Ins. Co., 34 S. W. (2d) 552; Indemnity Mutual Assurance Co. v. Powell, 271 S. W. 538; McNabb v. Niagara Ins. Co., 22 S. W.

(2d) 364; Robinson v. Franklin Ins. Co., 35 S. W. (2d) 635; Madsen v. Prudential Ins. Co., 185 S. W. 1168; Thelen v. Metropolitan Life Ins. Co., 2 F. Supp. 404; Bank Savings Life Ins. Co. v. Butler, 38 F. (2d) 972; Woolfolk v. Home Ins. Co., 202 S. W. 627.]

All except the two Federal cases, cited by plaintiff, concern questions arising upon insurance on *property* or *interests therein* and most of them are suits on oral contracts of fire insurance. It is now well established in this state that an oral contract of insurance on *property* is enforcible if made by a resident agent of a *foreign insurance company*. But when all the Missouri decisions are carefully read and analyzed, they are founded upon a construction of what is now Section 6013. This court was the first appellate court in Missouri to construe that section, which was enacted in 1897. In Sheets et al. v. The Iowa State Insurance Co., 153 Mo. App. 620, we were discussing the question of the authority of a resident agent of a Fire Insurance Company to consent to the assignment of a fire policy when the property insured was sold, and we held, l. c. 631, that by the terms of said statute a resident agent of a Foreign Insurance Company which writes insurance on *property or interests therein is a general agent,* and that his principal would be bound by his oral contract of insurance. It is true that sometimes the appellate courts have used rather general language and, on first reading, would leave the impression that such statute applies to *all Foreign Insurance Companies* of whatever kind or character. But when those cases are analyzed, it will be found that the court was discussing and deciding an oral insurance contract on *property or interests* therein and not contracts of life insurance.

In McNabb v. Niagara Insurance Company, *supra,* l. c. 366, we referred to what is now Section 6013 as a "special statute," and we were discussing and deciding an oral contract of fire insurance. But plaintiff contends that this section and section 6003 must be read and construed together since both sections are found under the "general provisions" of our insurance code. We think they can be read and construed together and in perfect harmony.

Section 6003, as we construe it, requires all insurance companies of every kind and character, and whether domestic or foreign, to annually procure from the superintendent of insurance a certificate stating that it has complied with the laws of this state authorizing it to do business in this state, and a copy of which certificate "shall be held by every agent or solicitor for such company doing business for such company within this state. . . . "

We direct attention to Section 6019 of this same article which makes it a misdemeanor for any person to act as *agent or solicitor* for *anyone* engaged in the transaction of insurance business unless such *agent or solicitor* has such a certificate, as is required by section 6003. Both sections refer to "agent and solicitor" but make no effort to classify

agent and do not provide that an agent be licensed under any classification or that the requisition for the license or certificate must designate in what capacity the agent shall act or what powers he shall have. In Hawes v. American Insurance Company of St. Louis (a domestic insurance company), 7 S. W. (2d) 479, this court, in discussing these two sections and a requisition identical with the one present in this case, said, 1. c. 482-483:

"It was therefore unnecessary for the defendant, in making the requisition for the licensing of Stepp, to designate in particular the kind of agent he was to be, and we do not think that he was so designated in the requisition shown in the record. It is claimed by plaintiff that this requisition shows that defendant had appointed Stepp as a general agent, but the requisition does not so state. It does not say that he was appointed agent for the transaction of *all* of defendant's authorized business of insurance in the state of Missouri, but 'merely its authorized business of insurance,' etc. What part of its authorized business he was appointed to transact is not disclosed upon the requisition. For all the record shows, this requisition might have been made upon a blank furnished by the insurance department for the purpose merely of a general licensing of agents under the provisions of the statute, with no thought of designating what kind of agent the party sought to be licensed should be or what powers he should have.

"An agent who is merely authorized to solicit insurance, take applications, deliver policies, and collect premiums is without power to make oral contracts of insurance (Rhodus v. Kansas City Life Ins. Co., 136 Mo. App. 281, 137 S. W. 907; 26 C. J. 42, 289; 1 and 6 Cooley's Briefs on Insurance, pp. 347, 404, 418; Punton v. United States Life Ins. Co., 213 Mo. App. 49, 52, 54, 245 S. W. 1080), but, if he issues, countersigns, or makes contracts of insurance himself, then he is deemed to have such authority, in the absence of notice, actual or constructive, to the contrary to parties dealing with him (Beswick v. Nat. Casualty Co., 206 Mo. App. 67, 226 S. W. 1031; Kring v. Ins. Co., 195 Mo. App. 133, 136, 189 S. W. 628; Trask v. German Ins. Co., 53 Mo. App. 625; Banks v. Clover Leaf Casualty Co., 207 Mo. App. 357, 233 S. W. 78; Brownfield v. Phoenix Ins. Co., 26 Mo. App. 390; Salisbury v. Live Stock Ins. Co. (Mo. App.), 202 S. W. 412; 32 C. J. 1036.

". . . Plaintiff, therefore, failed to show that Stepp had any authority in the premises more than an ordinary soliciting agent with power to take applications, deliver policies, and collect premiums, which does not include the power to make contracts of insurance such as is sued upon in this case. Nor has plaintiff shown that defendant has held Stepp out as an agent having such a power. Plaintiff, therefore, wholly failed to show a valid oral contract of insurance with defendant. . . ."

But plaintiff contends that this court, in the McNabb case, *supra*, and the Springfield Court of Appeals in the Foursha case, *supra*, distinguish our ruling in the Hawes case from those two cases and others of similar nature. When those two opinions are carefully read, it will be found they were discussing and construing what is now Sec. 6013 and were not discussing, as we were in the Hawes case, a construction of what is now Sections 6003 and 6019.

Plaintiff is overlooking the fact that the Foreign Companies referred to in Sec. 6013 are those insuring *property or interests therein* and that they can make contracts of insurance *only* by resident agents authorized to "*countersign all policies so issued.*" No such authority is required by statute of an agent of a life insurance company, whether that company be domestic or foreign.

With reference to the two Federal decisions cited by plaintiff, it will be found that in the Thelen case Judge Otis construed Section 5844 as making a soliciting and collecting agent, a *general agent,* of insurance companies, upon whose authority there are no limitations; but in Bennett v. Royal Mutual Insurance Co., 112 S. W. (2d) 134, l. c. 147, this court, in a well written opinion by Reynolds, J., refused to follow the Otis opinion. For a comprehensive discussion of the power and authority of a life insurance agent under the laws of this state, we recommend to those interested a study of the opinion in the Bennett case.

The opinion in Bank Savings Life Insurance Company, *supra,* is not controlling because there the company's agent was, in fact, a *general agent,* and the court was not discussing the question of whether the evidence established the fact that the agent was a general agent. From a reading of the opinion it would seem such fact was conceded and the question under discussion was the power and authority of a *general agent.* That is a very different question from the one under consideration.

We hold that Section 6013 relates only to foreign insurance companies making insurance contracts upon *property or interests therein* and does not regulate or apply to other insurance companies or their agents; and that Section 6003 applies to all insurance companies or associations, whether domestic or foreign, and regulates the issuance of a license to the agent of such company. In Mackey v. Hyde, 315 Mo. 681, l. c. 691, the Supreme Court in banc, in discussing what is now Secs. 6003 and 6004, defines the comprehensive purpose of said sections as follows:

"*All persons, whether individuals, associations or corporations, are prohibited from engaging in the insurance business in this State,* unless and until they have received from the Superintendent of Insurance a certificate stating that they have complied with all the requirements of its insurance laws; even then they can undertake no business or risks except as specifically provided in those laws. (Secs.

6308, 6309, R. S. 1919.) and no person can act as *agent* or *solicitor* for an insurance company in procuring risks until there has been delivered to him a copy of the certificate showing his principal's authorization to do business. (Sec. 6308, R. S. 1919)'', now Sec. 6003. (Italics ours).

Since the only evidence in the record which plaintiff asserts supports her contention that Marshall was a *general agent* of the defendant is the above quoted requisition and certificate, we must hold that she failed to prove an essential element of her case, to-wit; that the agent had authority to make the oral contract of insurance sued on.

It follows that the judgment should be reversed and the cause remanded. It is so ordered.

All concur.