COOPER WESTON, Respondent, v. AMERICAN
INSURANCE COMPANY, Appellant.

**Kansas City Court of Appeals, June 14, 1915.**

1. INSURANCE, FIRE: Policy: Removal: New Location. Where
an agent for a fire insurance company issues a policy on house-
hold furniture stating it to be in a certain house when he
knows it is not in that house, but is to be, and is immediately
moved into it, the policy is valid and the company is liable
for its destruction in its new location.

2. ———: Policy Before Removal: Valued Policy. Where house-
hold furniture is to be removed to a new location, but before
removal an insurance company issues a policy describing it as
in the new location, and, after removal the goods burn, the com-
pany is liable and the policy is a valued policy, under the
statute, as in any other instance.

3. ———: Vexatious Delay: Penalty: Good Faith. Where a
fire insurance company vexatiously refuses to pay an honest and
legal claim of loss, the statute authorizes a jury to assess a
penalty of ten per cent and plaintiff's attorneys fees against
the company. But in determining whether the refusal was
vexatious, the matter must be viewed as it appeared when the
refusal was made. If, at that time, there was enough to excite
a suspicion against the integrity of the loss, in the mind of a
prudent and honest man in good faith endeavoring to ascertain
the facts, there is no ground upon which to base a verdict for a
penalty.

4. ———: ———: Jury Question: Good Reason to Believe.
The question whether there has been a vexatious refusal of an
insurance company to pay a loss is for the jury, but a verdict
for the penalty will not be allowed to stand, where the company
had good reason to believe that a fraud or false claim is being
made.

Appeal from Jackson Circuit Court.—*Hon. A. C.
Southern*, Judge.

AFFIRMED.

*Fyke & Snider* for appellant.

*J. H. McVey* and *Park & Brown* for respondent.

ELLISON, P. J.—Plaintiff's action is based on a policy of fire insurance covering personal property in the sum of fifteen hundred dollars. The judgment in the trial court was for her.

It appears that plaintiff owned household goods in a residence on Prospect avenue in Kansas City, Missouri, and she had a policy of insurance on them for $300 for a term of three years. In about one year thereafter she concluded to move to 4605 State Line street. She went to defendant's agent and informed him of her intention to move to the latter street and that she desired to increase her insurance to $1500. He cancelled the old policy, allowed her for the unearned premium and issued the new policy, locating the property as in the house on State Line street, to which it was to be removed. A few days thereafter she removed the property. Shortly after her removal she acquired other property, notably a piano, which she valued at $300. In about one month after her removal, the house and her property were totally destroyed by fire.

In our opinion the policy attached as valid insurance in the new location as soon as it was removed there. The agent knew of the old policy and of the intention to remove to another place and consented to it, and increased the insurance in a policy which stated the property to be in the new location. The insurance was in fact made of property situated in a certain building, and though it was not there at the date of the policy, it was to be immediately taken there. The following cases, while not like this in all particulars, sustain plaintiff's case: Pollock v. Ins. Co., 127 Mich. 460, 473; Cooper v. Ins. Co., 96 Minn. 81; Williamsburg Ins. Co. v. Cary, 83 Ill. 453; Hulen v. Ins. Co., 80 Kan. 127.

We are furthermore of the opinion that the policy became a valued policy in the new location for the sum insured. There is no reason why the law as to valued

policies on personal property should not apply in instances where there is a removal with the consent of the insurer. And this is true even though, at the time the policy is issued, none of the property is in the place to which the insured, with the consent of the insurer, intends to remove it, if it is there when burned.

The statute (Sec. 7030, R. S. 1909) as interpreted by the courts, directs insurance companies not to issue policies for more than three-fourths the value of the property, and that when a company issues a policy for a certain amount it will not be permitted to dispute that sum. That is to say, it will be conclusively presumed that the property is worth one-fourth more than the amount insured. In other words, the policy becomes a valued policy for the sum insured. [Gibson v. Ins. Co., 82 Mo. App. 515; Spickard v. Fire Assn., 164 Mo. App. 1, and cases cited.] But the amount to be recovered on such a policy will, of course, depend upon the status of affairs at the time of the fire. If there has been no change, the full amount insured is due, but if there has been a decline in value, a loss, or sale, of a part, with no corresponding increase by new acquisitions, such loss should be deducted; and this will apply to household furniture as well as merchandise kept for retail. But the basis of calculation will be an amount of which the sum named in the policy is three-fourths, which in this case is $2000. [Spickard v. Fire Assn., supra.] It appearing in evidence that a few articles were not brought to the new location and that others were acquired after the policy was issued, it became necessary to ascertain if these changes reduced the total value below $2000, and plaintiff made a statement, under oath, of what the property burned consisted, its value and when acquired. This showed a value slightly in excess of $2000 and, if correct, entitled her to recover the full amount of the policy. Defendant attacks this statement as being falsely exaggerated and backed by perjury, which, it insists, should forfeit plaintiff's

right to recover. This was, however, submitted to the jury and we must accept the result, and hold plaintiff entitled to the amount of the policy and interest.

What we have already stated will serve as an introduction, or partial explanation, of what follows. Plaintiff was allowed, in addition to the sum named in the policy and interest, $250 for her attorney's fees and $150 as a penalty for vexatious refusal to pay. Usually interest is the penalty the law attaches to delayed payment of just indebtedness; but in the matter of payment for losses insured against, insurance companies had so frequently wilfully delayed and annoyed honest claimants by attempting to beat down their claim below the actual loss, that the Legislature saw fit to discourage such conduct by adding attorneys' fees and a penalty where the "company has vexatiously refused to pay the loss." [Sec. 7068, R. S. 1909.] But while that statute was enacted to discourage fraudulent practices by insurance companies, it was not intended to prevent them from investigating the integrity of losses claimed, and to resist their payment where the question involved was doubtful, or the conduct of the insured was such as to lead a reasonable person, acting in good faith, to believe that a fraud was being practiced. [Blackwell v. Ins. Co., 80 Mo. App. 75; Rogers v. Ins. Co., 157 Mo. App. 671, 683.] It is true the question is one of fact for a jury (Keller v. Ins. Co., 198 Mo. l. c. 460) but the jury in determining the fact, must, as in all other cases, have substantial evidence upon which to base a finding. [Patterson v. Ins. Co., 174 Mo. App. 37, 44; Kahn v. Ins. Co. (not yet reported), 173 S. W. 695.]

Of course, the question of vexatious refusal is not determined by the result of the trial. It must be settled from the view presented at the time of the refusal to pay. If that was such as to lead a prudent man, acting in good faith, to believe there was no liability, the company is not to be assessed with a penalty for

its honest intentions founded upon considerations which would induce belief in a prudent and practical man. [Blackwell v. Ins. Co., supra.] In this case the testimony of plaintiff herself is ample justification for defendant's belief that she had not a legal and honest claim. In making up values at time of the fire, she put in the property acquired after the issuance of the policy; chiefly a piano which she valued at $300. In accounting for this piano she testified to a remarkable story. She stated that it was given to her by a strange man whose first name she did not know and whom she had only met on the street in Kansas City and at the parks. She did not know where he lived, nor where he was, nor whether he was married or single. All she knew was that he said to her at one of these meetings, "Little girl whenever you get a place to put a piano I will give you one," and that afterwards he sent it to her, but that she did not know who brought it or where it came from. Other evidence showed it to have been an old instrument practically worthless.

Certain other property stated to be of the value of $637 in her proofs of loss, and placed at $1200 in one of her sworn statements, she testified was given to her by a man named Taylor, a married man to whom she was engaged to be married "when he got a divorce." Taylor was an extra brakeman on a freight train, working "off and on" and earned from $25 to $60 per month, and gave her these articles in the space of a few months. He testified that he paid only $86 for them.

There are many other circumstances in the record well calculated to arouse suspicion and honest inquiry by a prudent man. But the foregoing suffices to show that there is no justification whatever in inflicting the penalty on defendant for refusing to pay the claim. In fact, in the light of the record, it is a matter of grave doubt whether she should have had a verdict

for the insurance; but, as already stated, we have concluded that there was a question for the jury and hence will affirm the judgment, if plaintiff will, within fifteen days remit the sums found for a penalty and for attorneys' fees, otherwise, the judgment will be reversed and the cause remanded. All concur.