W. F. McNABB, RESPONDENT, v. NIAGARA FIRE INSURANCE COMPANY, APPELLANT.

Kansas City Court of Appeals. November 11, 1929.

*Clare Magee* and *P. M. Marr* for respondent.

*Slaymaker, Merrell, Ward & Lock, Leahy, Saunders & Walther* and *Lyon Anderson* for appellant.

ARNOLD, J.—This is a suit based upon an alleged oral contract of insurance. Defendant is a corporation created under the laws of the State of New York, duly licensed and authorized to do business in the State of Missouri, and is engaged in writing fire insurance.

On December 28, 1927, plaintiff made application to one George A. Tate, defendant's agent at Unionville, Missouri, for insurance on his personal property located on his father's farm, of which plaintiff was a tenant. An application was signed, listing the following property: $600 on grain and seeds of all kinds; $400 on harness, machinery and other personal property named; $200 on cattle and $200 on horses—a total of $1400. At the time the application was made plaintiff paid defendant's agent a stipulated premium of $21 for one year's insurance for which a receipt was given.

Before the policy was issued, and on January 1, 1928, the building in which the property listed in the application was situated, excepting the live stock, was destroyed by fire, to the value of approximately $827.85. A timely notice in writing, by registered mail, was given defendant and defendant's agent was notified as well. No written policy of insurance was ever delivered to plaintiff. On the refusal of defendant to pay the amount of the loss on demand, this suit was instituted.

The petition alleges the corporate status of defendant and that George A. Tate was, and is, the agent and representative of defend-

ant to solicit insurance and to countersign policies issued by it, and as such, maintains an office in Unionville, Putnam county, Missouri; that plaintiff is a resident of Jackson Township, Sullivan county, Missouri, and is a tenant of certain real estate therein situated, and in possession of a certain barn on said premises in which were stored grain, seeds, harness, machinery and other personal property belonging to and owned by plaintiff; that on December 28, 1927, he made application to said G. A. Tate, defendant's agent at Unionville, Missouri, for insurance on the above mentioned property and other personal property of plaintiff; that plaintiff signed and executed an application for the sum of $1400 fire insurance in defendant company, as follows: $600 on grain and seeds of all kinds stored in said barn; $400 on harness, machinery and other personal property stored in said building; $200 on cattle and $200 on horses; that plaintiff paid to said agent the sum of $21, premium, and the agent duly executed and delivered to plaintiff a receipt therefor, the agent stating at the time that said property was insured from and after that date, and that a policy of insurance would be issued and delivered to him by said agent, within a short time thereafter; that it was expressly agreed between plaintiff and said agent at the time of making application and paying said premium that the insurance should commence and be binding upon defendant from the time of the receipt of the premium; that by the terms and conditions of the policy agreed to be written, said policy was to commence at 12 o'clock noon on December 28, 1927, and continue until 12 o'clock noon on December 28, 1928, and to insure plaintiff's property as aforesaid against loss or damage by fire to the amount of $1400, in consideration of the premium of $21, paid as aforesaid; that the terms and conditions in said policy should and would conform to the standard fire insurance policies provided by the laws of Missouri; that on January 1, 1928, at about one or two o'clock in the morning, while said agreement was in full force and effect, the building in which the property, except the live stock, was situated, was destroyed by fire; that the property so destroyed was of greater value than insured for and that a loss of $827.85 was thereby sustained; that due notice was given defendant and its agent; that defendant failed and refused to furnish blank proofs of loss and has thereby waived such proofs of loss; that no policy of insurance was ever delivered to plaintiff as agreed; that demand was duly made of defendant for payment of said loss, but that defendant wholly failed and refused to pay same; that such delay on the part of defendant was and is vexatious and without reasonable grounds, and by reason thereof plaintiff has been compelled to, and has, employed an attorney to institute suit; that a reasonable attorney's fee therefor is $300. Judgment is asked in the sum of $827.85, with in-

terest at six per cent from January 1, 1928, and for ten per cent damages and an attorney's fee of $300.

The answer admits the corporate status of defendant as alleged, and that it is authorized to transact business in the State of Missouri, and generally denies each and every other allegation in the petition. As affirmative defense, the answer pleads that the application al- leged in the petition was in writing and was delivered to G. A. Tate to be forwarded to defendant at its home office in Indianapolis, Indiana, and that said application contained the following clause:

"Notice is hereby accepted by the applicant named herein, and it is understood and agreed hereby that no agent, subagent, solicitor or other representative of said Niagara Fire Insurance Company, except only the manager of the farm department of said company at Indianapolis, Indiana, has any authority to make any contract of insurance or to insure on behalf of said company or to waive, modify, alter or discharge any policy or any condition of any policy issued by said company, or to dispense with the performance of any war- ranty, provision or condition of any such policy, either before or after any loss under any policy, and the applicant or applicants agree that said company shall not be bound by any statement made by the applicant or applicants to any agent, subagent, solicitor or other representative of said company and not contained in this ap- plication, nor by any knowledge possessed by any such agent, sub- agent, solicitor or other representative, no matter how, when or from whom such knowledge shall be acquired."

The answer alleges that said application was never accepted by de- fendant, but was rejected, and that there never was a policy of in- surance issued thereon to plaintiff, nor was there any contract of insurance entered into between plaintiff and defendant at any time; denies that G. A. Tate had authority to bind defendant by any promise to insure; denies that said Tate was an agent authorized by it to effect contracts of insurance for it, all of which plaintiff well knew; denies that said Tate stated to plaintiff at the time, that said property would be and was insured in any sum from and after the date of said application; denies that it was agreed between plain- tiff and defendant that the insurance should begin and be binding on defendant from December 28, 1927, as alleged.

As further affirmative defense the answer alleges that the ap- plication presented by plaintiff was for a policy of the kind and form usually executed and issued by defendant on farm property in Mis souri, and that plaintiff contemplated at the time of his applica- tion that any contract which might result from defendant's ac- ceptance of said offer would be subject to the policy usually issued by defendant, and that the same was of the standard form and contained the following clause:

"This policy is based upon the valuations and representations contained in the insured's application and diagram of even number herewith, which the insured has signed and submitted to the company, and which are hereby made warranties and a part hereof; and if any false statements are made in said application or otherwise, . . . or if the property or any part thereof now is or shall hereafter become mortgaged or encumbered . . . then . . . this shall be null and void as to each and every subject of this insurance."

The answer alleges that plaintiff represented and warranted in his said application that none of the property mentioned therein was under mortgage, lien or encumbrance; that said statement was false and known by plaintiff to be false; that at said time there was in existence a mortgage on part of said property in favor of J. S. McNabb, which mortgage later was assigned to the Walton Trust Company, and was an existing lien against the same at the time of said application and fire; that defendant did not at any time prior to said fire know of the existence of said mortgage; that had it known of its existence, it would not have entertained the application for insurance.

The answer alleges that the sum of $21 paid as a first year's premium was to apply as such only in the event defendant accepted said application; that immediately after the rejection by it of the application, the said G. A. Tate tendered to plaintiff the said sum which plaintiff refused to accept; and "defendant now brings into court the sum of $21.63, being the amount so paid with interest at the rate of six per cent per annum from the date of payment."

The reply is a generaal denial, followed by the allegation that said G. A. Tate was a general and soliciting agent of defendant at the time of the agreement to insure, and that defendant is thereby estopped and precluded by the laws of the State of Missouri from denying that said agent had authority to bind defendant by an oral contract of insurance; that at the time defendant insured plaintiff's property as alleged in the petition, plaintiff informed defendant's said agent of the existence of a mortgage against a part of the property so insured, and that said agent assured plaintiff that such fact would not invalidate his insurance, and that said agent well knew that part of said property was mortgaged at the time the $21 premium was accepted by him; and that said statements and agreements between plaintiff and defendant's agent constituted a waiver of any objections defendant might have on account of said mortgage, and is estopped from making such defense.

The cause was tried to a jury, resulting in a verdict for plaintiff in the sum of $800, damage on account of loss by fire, and $200 attorney's fee. Judgment was entered accordingly.

A motion for a new trial was overruled and defendant has appealed. At the close of plaintiff's case defendant asked, and the court refused, an instruction in the nature of a demurrer. This action of the court is assigned as error. The basis of this charge, as urged by defendant, is that an agent having only authority to solicit insurance, take applications, deliver policies and collect premiums, does not have power to make an oral contract of insurance; and that where notice of limitation upon an agent's power to effect an oral contract of insurance is brought to the attention of persons dealing with such agent, they cannot rely upon such agent's oral agreement to insure, and that where a written application for insurance is presented to an applicant for execution, it is notice that such agent does not have power to effect an oral contract of insurance. In support of these contentions, defendant cites Banks v. Clover Leaf Casualty Co., 207 Mo. App. 357, 233 S. W. 78. But an examination of that case discloses the difference between the Banks case and the one at bar. The defendant in the Banks case, as here, was a foreign corporation, and the plaintiff declared on a written contract of insurance but failed in his proof and then attempted to establish his rights under an oral contract. The court denied the plaintiff's right of recovery.

Likewise the case of Hawes v. Ins. Co., 7 S. W. (2d) 479, is not in point here because the defendant there was a domestic corporation, while in the case at bar defendant is a foreign corporation and controlled by special statute, to which we shall hereinafter refer. Defendant also cites Salisbury v. Insurance Co., 202 S. W. 412. In that case two applications were made for insurance on horses. The defendant refused to issue the insurance in the amount first sought and applications were made in less amounts to the local agent. Defendant was a foreign corporation. But that case should no longer be followed, for reasons herein given. Defendant also cites Embree v. Insurance Co., 62 Mo. App. 132. That case was decided prior to the enactment of any statute in reference to agents of foreign corporations and does not apply here.

It was held in Murphy v. Insurance Co., 268 S. W. 671, and in Woolfolk v. Insurance Co., 202 S. W. 627, that an oral contract of fire insurance is valid in this State. In 1897 the legislature passed a law (Sec. 7047, R. S. 1909) which governs in this case. The section is now 6315, Revised Statutes 1919, and is as follows:

"Foreign companies admitted to do business in this State shall make contracts of insurance upon property or interests therein only by lawfully constituted and licensed resident agents, who shall countersign all policies so issued. And any such insurance company who shall violate any provision of this section shall suffer a revocation of its authority by the superintendent of insurance to do

business in this State, in addition to the penalty prescribed in section 6322, such revocation to be for the term of one year."

In construing this section it was held in Prichard v. Insurance Co., 203 S. W. 223, that, in view of the authority conferred upon an agent of a foreign insurance company by this section, the agent may bind such company by an oral contract. Such agent may even consent to the assignment of a policy. [Murphy v. Ins. Co., 285 S. W. 772; Bealmer v. Ins. Co., 193 S. W. 849; Sheets v. Ins. Co., 153 Mo. App. 620, 135 S. W. 80.] In construing section 6315, this court said in the Sheets case:

"The meaning of the statute is clear and one does not have to go far to ascertain the legislative intent that prompted its enactment. Obviously one of its main purposes was to put a stop to the irritating and unjust practice indulged in by some insurers of adroitly phrasing their agency contracts in a way to bestow general powers on their agents who come in direct contact with the public, when such powers relate to benefits flowing to the company, and to invest such agents with no power to represent the company when the benefits of the insured are involved. . . . The Legislature evidently thought further to discourage them by requiring all contracts of insurance to be made by regularly constituted and lawfully licensed resident agents who shall countersign the policies so that when the insured received his policy he would know that the local agent who countersigned it possessed the power to make contracts for his company and to bind it as a general or as defendant calls it a recording agent. . . . The contention that he was only a soliciting agent necessarily is an assertion that defendant made a contract of insurance in this State in violation of the law, since, in such case it would have made the contract of insurance without the intervention of a resident agent duly authorized to make such contracts. Defendant will not be suffered to stand on such immoral ground . . ."

Here plaintiff's position is supported by the fact that the receipt issued by defendant's agent was a clear, unmodified receipt for the premium paid. There was no clause incorporated therein to the effect that the policy would be issued by defendant if the application were accepted. The testimony tends to show that defendant's agent Tate informed plaintiff prior to the fire that the company had refused to issue a policy upon the application, suggesting to plaintiff that he, Tate, could possibly place the insurance with some other company. But in this suggestion plaintiff refused to acquiesce upon the grounds that his insurance was binding from the date the premium was paid. There is a dispute as to the purport of the conversation between plaintiff and defendant's agent at the time the application was signed and the premium paid. As to which statement is true, it is not our province to determine. That was properly

left to the jury, the judges of fact. They decided the point in plaintiff's favor and we cannot disturb their finding.

It is charged the court erred in giving plaintiff's instruction No. 3, which submitted to the jury the question of vexatious delay, as follows:

"The court instructs the jury that if you find that defendant company vexatiously refused to pay the amount agreed on, you may assess damages against the defendant not to exceed ten per cent of the amount of the loss and a reasonable attorney's fee, not to exceed three hundred dollars."

There is no hard and fast rule as to vexatious delay. The question is not determined by the result of the trial but must be settled from the view presented at the time of refusal to pay. If that is such as to lead a prudent man, acting in good faith, to believe there was no liability, the company is not to be assessed a penalty for its honest intentions, founded, of course, upon considerations which would induce belief in a prudent and practical man. [Weston v. Ins. Co., 191 Mo. App. 282, 177 S. W. 792.] No doubt defendant relied upon the opinion in the case of Salisbury v. Insurance Co., 202 S. W. 412; if so, its refusal to pay was not vexatious. However, as stated above, that case should no longer be followed.

The judgment is affirmed on condition that plaintiff, within ten days from the filing of this opinion, remits the sum of $200, being the amount of attorney's fee; otherwise the judgment will be reversed and the cause remanded for a new trial. *Bland, J.*, concurs; *Trimble, P. J.*, absent.