Louie CHAILLAND, Respondent,

v.

M. F. A. MUTUAL INSURANCE
COMPANY, Appellant.

No. 49263.

Supreme Court of Missouri,

En Banc.

Jan. 13, 1964.

Rehearing Denied Feb. 10, 1964.

Ford, Ford & Crow, James F. Ford, Wendell W. Crow, Kennett, for appellant.

Dalton & Treasure, Kennett, for respondent.

HOLMAN, Judge.

Louie Chailland was injured on May 13, 1959, when the horse he was riding was struck by the rear part of a tractor-trailer unit driven by Franklin E. Smiley. He obtained a judgment against Smiley for $15,000 for his injuries and $500 for the death of his horse. Upon defendant's appeal to this court that judgment was affirmed. Chailland v. Smiley, Mo.Sup., 363 S.W.2d 619. In this garnishment proceeding Chailland sought to collect the aforementioned judgment from M. F. A. Mutual Insurance Company. Plaintiff's theory is that defendant Smiley's liability for payment of said judgment was covered by an oral contract of liability insurance with said insurance company. A trial before the court resulted in a judgment in favor of plaintiff in the sum of $15,500, together with interest in the amount of $1,295.01, and the court costs totaling $391.67. Garnishee, M. F. A. Mutual Insurance Company, has duly appealed. We have jurisdiction because of the amount in dispute.

The appeal was originally heard and an opinion adopted in Division Two but the case was thereafter transferred to Court en Banc. Additional briefs were filed and the cause was re-argued and resubmitted. Portions of the aforementioned opinion are here adopted without the use of quotation marks.

Plaintiff's contentions here are that (1) he proved a valid oral contract to insure which was binding on M. F. A., and (2), in any event, the appellant is estopped to deny that liability insurance was in effect concerning the occurrence in which he was injured, because, with full knowledge of the facts, it conducted the defense of the suit in question without procuring a reservation of rights or nonwaiver agreement from defendant. Since we have concluded that plaintiff's first point is meritorious and is decisive of the appeal, we need not discuss or rule his second contention.

"In a case of this nature we review the record de novo and determine the credibility, weight and value to be accorded the testimony and other evidence, and arrive at our own conclusions based upon the entire record. In so doing we give due deference to the opportunity of the trial judge to see and hear the witnesses and to judge their credibility. Also, we should not set aside the judgment unless it is clearly erroneous. Civil Rule 73.01(d), V.A.M.R." Smith v. Tracy, Mo.Sup., 372 S.W.2d 925. In that connection, we rule, as contended by appellant, that the burden is on plaintiff to prove the facts essential to the garnishee's liability. Kelso v. Kelso, Mo.Sup., 306 S.W.2d 534, 71 A.L.R.2d 258.

Franklin E. Smiley is a resident of Leachville, Arkansas. He owns a tractor-trailer outfit and was "fixing to" haul gravel from Campbell, Missouri, to Blytheville Air Base in Arkansas. Before he could lawfully haul gravel between Campbell and Blytheville, it was necessary that he secure certain "permits" and that he carry liability insurance. Consequently, to effectuate these purposes, Smiley, on May 6, 1959, got in touch with Elmo Crum of Arbyrd, Missouri. Crum was an agent for the M. F. A. Mutual Insurance Company and Smiley had dealt with him at least once before. Specifically, Smiley said that he got in touch with Crum "to buy some insurance. * * *

Well, it was insurance where I could have I.C.C. or ever what that is. Is it I.C.C.? Q. A permit on your truck? A. Yeah, for a permit, twenty-five/one hundred ($25,-000 and $100,000), I believe that's right." He gave Crum a check for $50 and "he said that I was insured, and I had to have the insurance to get that I.C.C. permit, you see, and he called Little Rock and called Blytheville and St. Louis, two or three more places, and I also had to have that permit to haul gravel—. * * * Well, he just said he covered me with insurance and I was wanting a permit, mostly what he was doing was trying to find out how to go through to get it."

On May 13 Smiley was involved in the accident with Chailland and again he called Crum, and Crum said, "Well, we'd better go see about it." So Crum and Smiley went to the scene of the accident and interviewed two or three witnesses. As to the "permits," Smiley said, "I got some stuff on it, but after that accident happened I just dropped it," and he was not issued either an "I.C.C. permit" or a "P.S.C. permit." The appellant did not receive an application for insurance from Smiley and did not issue a policy of liability insurance to him.

Mr. Smiley also testified that on the building in which Crum's office was located there were "M.F.A. signs—signs that said M.F.A. Insurance"; that in addition to the $50 check he later paid Crum $20 which he thought was after the accident; that about three days after the collision Crum sent him the $70 he had paid and told him he had better get a lawyer; that he then employed Oscar Fendler and his associate, James W. Steinsiek of Blytheville, Arkansas, to represent him.

On May 16, 1959, Mr. Fendler wrote the home office of appellant in Columbia, Missouri, giving notice of the collision on May 13, 1959, and stating that because of the facts heretofore stated Mr. Smiley considered he had liability insurance with M.F.A. A cashier's check for $70 was enclosed. On May 21, 1959, Will L. Nelson, an attorney in appellant's home office, wrote Mr. Fendler advising that no policy had been applied for or issued to Mr. Smiley and that therefore the company would not take any action in connection with any claims that might arise out of the accident. Included in that letter was the following: "On Mr. Smiley's first visit to Mr. Crum's office, Mr. Smiley was told that the premium on a policy containing the limits which would be required would be $190.00. On May 6, 1959, Mr. Smiley did pay $50.00 by check, to Mr. Crum. * * * Our agents are authorized to execute a written binder on insurance in certain instances, but in this case no such binder was executed. * * * We are returning the above cashier's check which you have tendered in your letter of May 16, 1959."

On May 25, 1959, the summons in plaintiff's suit against Smiley (in which he sought to recover $51,500) was served on the Secretary of State and forwarded by him to Mr. Smiley. On May 28, Mr. Fendler mailed the petition and summons to appellant and these papers were returned to him by Mr. Nelson on June 3. Thereafter, on June 10, 16, and 23, Mr. Fendler wrote additional letters to Mr. Nelson demanding that appellant defend the suit and assume liability under the alleged oral insurance agreement. Finally, on June 22, Mr. Nelson wrote plaintiff and Mr. Fendler advising that, "[w]ith the understanding that we are reserving all of our rights under the policy, as above stated, and are not waiving our position or any of our rights by hiring defense counsel, investigating the accident, or negotiating toward a settlement, we are employing the law firm of Ford and Ford, Kennett, Missouri, to defend the suit." On June 26, Mr. Fendler replied that Mr. Smiley would "cooperate to the fullest with Ford and Ford, Kennett, Missouri, as his attorneys, without agreeing to any restrictions or reservations contained in your letters. Both J. W. Steinsiek of Blytheville and I shall cooperate with Ford and Ford, as attorneys for Smiley's coverage, and with your company in preparation of this case

for trial and in the trial whenever you or Ford and Ford request our advice and assistance. We agree to no waivers or reservations by Mr. Smiley."

When the aforementioned suit was tried Mr. Steinsick assisted the attorneys employed by appellant. In that connection it should be noted that the amount plaintiff sought to recover ($51,500) was much more than the amount of coverage ($25,000) Smiley claimed he had with appellant.

The only witness offered by appellant was Mr. Nelson. In addition to identifying the letters heretofore mentioned he testified that Mr. Crum was an independent agent for solicitation of insurance for M.F.A. Mutual and Countryside Casualty Company (another M.F.A. company); that on January 27, 1960, appellant and Countryside each terminated Mr. Crum's agency contract. He also stated that in 1959 commercial tractor and trailer units were insured under separate policies and that liability coverage on the tractor would not apply to the trailer.

As indicated, garnishee did not offer the testimony of agent Crum and therefore the testimony of Mr. Smiley as to the occurrences and conversations between them is uncontradicted. We have reviewed Mr. Smiley's testimony and find it to be true and therefore adopt said testimony and all reasonable inferences to be drawn therefrom as a part of the facts in this case.

Appellant has briefed the contention that plaintiff is not entitled to recover because he failed to prove a valid oral contract of insurance, and even if a contract had been proved it would not be enforceable because Crum had no authority to bind it by such an oral contract.

"In the absence of a statute or other positive regulation to the contrary, a contract of insurance may be made by parole. The fact that contracts of insurance are not usually made in this way is not evidence that they cannot be so made. There is nothing in the nature of insurance which re-quires written evidence of the contract. The contract may be verbal or in writing, or partly in writing and partly verbal. It is, of course, essential to the existence of an oral, as well as a written, contract of insurance that the minds of the parties shall have met on all the essential terms of the contract, as discussed supra § 227; but, where the minds of the parties for a valuable consideration have met on all the terms of the contract, it is complete and enforceable, although it was intended by the parties to be evidenced by a policy which, because of some fortuity, was not delivered before the happening of the event insured against." 44 C.J.S. Insurance § 250, pp. 1019, 1020.

■ The five elements necessary for an oral contract of insurance are: "First, the subject-matter; second, the risk insured against; third, the amount; fourth, the duration of the risk; and fifth, the premium. It is not essential that all of these elements of the contract be expressly agreed upon if the intention of the parties to the contract in these particulars can be gathered from the circumstances of the case. An oral contract of insurance is binding, although the premium is not to be paid at the time of its consummation if credit is given." Murphy v. Great American Ins. Co., 221 Mo.App. 727, 285 S.W. 772, 773.

■ We are convinced from the evidence that Smiley and Crum agreed, on or about May 6, 1959, that appellant was to be bound, from that date, to insure Smiley's liability (limit $25,000/$100,000) in the operation of his tractor-trailer unit pending the issuance of the regular insurance policy. The subject matter was, of course, the tractor-trailer unit which Smiley planned to use in hauling gravel. The risk was shown to be personal liability within the limits of $25,000 for injuries to one person and $100,000 for one accident. The premium was definitely shown to be $190.00 and it may reasonably be inferred that such was for the period of one year. Mr. Smiley paid $50 on the premium and it is obvious that Mr. Crum extended credit for the balance since he told

Smiley that he "was insured." Two acts on the part of Crum unquestionably indicate that he considered that the insurance was in force. One was the fact that he accepted a twenty-dollar payment on the premium after he knew of plaintiff's injuries, and the other was his conduct in making an investigation of the accident immediately after he learned of it.

■ Mr. Nelson testified that separate policies are issued for commercial tractors and trailers. Appellant says that Smiley testified that he wanted insurance on his "truck" and therefore there was no agreement to insure his trailer, which was the vehicle that struck plaintiff's horse. We think that contention is without merit. Both Smiley and Crum understood that Smiley wanted insurance so that he could haul gravel. He could not haul gravel without using both his tractor and trailer. It was obviously the understanding that the entire unit was being insured.

■ Appellant also suggests that Crum was agent for Countryside Casualty as well as M.F.A. Mutual and that there is nothing to indicate which of the companies was to carry the insurance. It is very clear from his testimony that Smiley considered that he was obtaining insurance with M.F.A., and we have concluded from all the evidence that such was the agreement between him and Mr. Crum. Moreover, Mr. Nelson's letters are sufficient to indicate a tacit admission that the conversations related to M.F.A. Furthermore, since M.F.A., rather than Countryside, undertook the defense of plaintiff's suit, it is hardly in a position to now contend that the conversations may have related to Countryside. We rule this contention against appellant.

■ The principal question remaining for our decision is whether Crum had the actual or apparent authority to bind appellant by the foregoing oral contract of insurance. Upon this general subject see Voss v. American Mutual Liability Ins. Co., Mo.App., 341 S.W.2d 270. There is evidence to the effect that Crum was only authorized to solicit applications, collect premiums, and deliver policies. And it is true, as contended by appellant, that an agent with such limited authority is ordinarily without power to make oral contracts of insurance. Hawes v. American Central Ins. Co., 222 Mo.App. 1057, 7 S.W. 2d 479. However, there was also unquestioned evidence (perhaps it should be called an admission) that Mr. Crum had additional powers. We refer to the following excerpt from Mr. Nelson's letter of May 21, 1959: "Our agents are authorized to execute a written binder on insurance in certain instances, but in this case no such binder was executed." The letter did not state that Crum did not have such authority in this instance but disposed of the issue by simply stating that no such binder was executed in this case.

■■ We have concluded that an agent authorized to execute a written binder of insurance must be held to have the apparent authority to make an oral contract of binder unless, of course, notice of any restriction against such power is brought home to a person dealing with such agent. It is a well-settled general rule that an agent who is authorized to issue or execute policies has the authority (at least apparent) to bind his company by an oral contract of insurance. Massachusetts Bonding & Ins. Co. v. R. E. Parsons Elec. Co., 8th Cir., 61 F.2d 264, 92 A.L.R. 218. "An insurance company is bound by a parol contract of insurance entered into by an agent authorized to make contracts of insurance, such as an agent authorized to issue policies * * *." 44 C.J.S. Insurance § 250c, p. 1023. The rule is established in this state that a resident agent of a foreign insurance company may bind his principal upon an oral contract of insurance. This rule is held to apply, regardless of his actual authority, because of a statute which requires that the agent countersign all policies issued. See Murphy v. Great American Ins. Co., supra, Corrigan v. National Motor Underwriters, 222 Mo.App. 113, 1

S.W.2d 845, and McNabb v. Niagara Fire Ins. Co., 224 Mo.App. 396, 22 S.W.2d 364. And the following cases indicate that the agent of a domestic company may so bind his company by an oral contract: Shepard v. Boone County Home Mut. Fire Ins. Co., 138 Mo.App. 20, 119 S.W. 984, and Baile v. St. Joseph Fire and Marine Ins. Co., 73 Mo. 371.

If, as we have said, an agent having authority to issue or sign a policy has the authority to bind his company by an oral contract of insurance, we think it reasonably and logically follows that an agent having authority to sign a written binder of insurance (as did Crum) also has the apparent authority to obligate his company by an oral binder. We accordingly rule, as heretofore indicated, that appellant was bound by the oral contract of insurance heretofore detailed.

■ Two other points briefed by appellant should be determined. Appellant contends that there is no evidence that the oral contract included coverage for liability relating to property damage. With that we agree. It follows that plaintiff is not entitled to recover from appellant the $500 included in the original judgment for the loss of his horse.

■ As to the remaining point, both parties agree that the trial court erred in entering a judgment against garnishee without first entering an order directing the garnishee to pay to the sheriff or into court the amount found due, all as provided by Civil Rules 90.06, 90.07, and 90.19, V.A.M.R. However, the error in entering judgment prematurely will not require a retrial of any issue but may be corrected by a remand with appropriate directions. Gilbert v. Malan, 231 Mo.App. 469, 100 S. W.2d 606.

The judgment is reversed and cause remanded with directions to the trial court to enter an interlocutory order directing the garnishee to pay to the sheriff or into court the sum of $15,000 with interest thereon from June 15, 1960, together with court costs in the sum of $391.67, and to enter such further orders and judgments as may appear appropriate in accordance with the views herein expressed.

STORCKMAN and HOLLINGSWORTH, JJ., concur.

HUNTER, Special Judge, concurs.

EAGER, C. J., dissents in separate dissenting opinion filed.

LEEDY and HYDE, JJ., dissent and concur in dissenting opinion of EAGER, C. J.,

DALTON, J., not sitting.

EAGER, Chief Justice (dissenting).

I do not believe that authority was shown on the part of Mr. Crum to make the asserted oral contract of insurance. I further dissent from the statement to the effect that an agent with authority to execute a written binder necessarily has authority to make an oral contract of insurance unless notice of restriction is given. The opinion and that statement misconceive the whole theory and meaning of an insurance binder which, simply stated, ordinarily means that by the terms of a written binding receipt the insurance dates from a certain time if and when a written application is subsequently accepted by the insurer. Brancato v. National Reserve Life Insurance Co., C.A. 8, 35 F.2d 612; State ex rel. Equitable Life Assurance Society of United States v. Robertson, Mo., 191 S.W. 989; Patterson v. Prudential Insurance Co. of America, Mo.App., 23 S.W.2d 198. That question is wholly different from one involving the authority of a general agent or an issuing agent to make an oral contract, as in Massachusetts Bonding & Insurance Co. v. R. E. Parsons Electric Co., C.A. 8, 61 F.2d 264, 92 A. L.R. 218 (cited in the opinion), where the agent was authorized to "issue" policies. And see also, Corder v. Morgan Roofing Co., 355 Mo. 127, 195 S.W.2d 441, for a

specific definition. In my view, there was not in the present case any legitimate showing of Crum's authority even to countersign policies, much less to "issue" policies, as is inferred in the foregoing opinion.

This opinion improperly shifts to the defendant the burden which should legitimately rest upon the plaintiff (Dickinson v. Bankers Life & Casualty Co., Mo.App., 283 S.W.2d 658, and cases there cited) and it misconceives the basic theories involved.