Clyde W. SWEARINGIN,
Plaintiff-Respondent,

v.

HARTFORD FIRE INSURANCE COMPANY, Defendant-Appellant.

No. KCD 29314.

Missouri Court of Appeals,
Kansas City District.

Aug. 28, 1978.

R. Max Humphreys, Miller, Humphreys & Seidel, Trenton, for defendant-appellant.

Erwin L. Milne, Terry M. Evans, Stockard, Andereck, Hauck, Sharp & Evans, Trenton, for plaintiff-respondent.

Before WELBORN, Special Judge, Presiding, PRITCHARD, J., and HIGGINS, Special Judge.

ROBERT R. WELBORN, Special Judge, Presiding.

Action to recover on transit insurance policy for damages occasioned by loss of livestock. Jury returned verdict for plaintiff for $1,185.41 plus interest under policy plus $118.54 penalty and $1,680 attorneys' fees for vexatious delay. Insurer appeals.

In June, 1940, Clyde W. Swearingin obtained a policy of insurance from the Hartford Fire Insurance Company against loss arising out of injury or death to livestock being transported to the Kansas City Stockyards for sale there. The premium on the policy was paid on the basis of each covered shipment. When livestock was delivered to the stockyard, an unloading ticket was prepared by or for the truck operator, showing the date of the receipt of the shipment, the owner's name, the number and type of livestock involved and the name and address of the trucker. The form included, under the heading "Insurance": "This shipment insured by _____." The tickets were filled out in quadruplicate. One copy was kept by the trucker. The original (white) copy stayed with the livestock. Two copies (yellow and pink) went to the stockyards company. All of the yellow tickets were put in a box and several times each day representatives of Hartford and two other companies issuing similar insurance would go through the box and obtain the tickets showing that the shipments were insured by their company.

In the case of Hartford, the yellow tickets showing Hartford as the insurer were taken to Hartford's office at the stockyards where the premium due Hartford for coverage of the shipment was noted on the ticket. The yellow copy was then transmitted to the commission company handling the transaction. The commission company deducted that charge, along with others, from the proceeds of the sale and remitted the amount of the insurance premium to the insurer. Each month the Kansas City Hartford office sent the Hartford office in Chicago a Truck Premium Advice Slip, showing the amount of premium charged each month for each policy issued by it.

The Kansas City Hartford office also maintained premium posting cards for each policy. The cards showed the premium received each month and also recorded losses paid under the policy.

At the time this controversy arose, the Hartford policy No. 15472, issued to Clyde Swearingin, could not be found. Hartford did not have a copy of the policy.

Swearingin was a farmer and livestock raiser near Carrollton. Hartford's premium posting cards, beginning in 1951 for Swearingin's policy, showed numerous premiums charged for shipments under the policy from that time until November, 1973.

Swearingin had three sons, one of whom was Clyde W. Swearingin, Jr. Beginning around 1960, the boys got into their own farming and livestock operation under the name Swearingin Brothers. According to Clyde, Jr., from that time numerous shipments were made to the Kansas City stockyards by them of livestock on which unloading tickets were prepared by him showing Swearingin Brothers as owner and trucker and Hartford as insurer. In all of those instances, the insurance premium was deducted although no policy had ever been issued to other than his father, Clyde W. Swearingin.

Clyde W. Swearingin died May 5, 1969. Hartford was not notified of his death. Between that date and November 15, 1973, nine shipments of livestock were made by Swearingin Brothers under unloading tickets showing Swearingin Brothers as owners and truckers of the livestock and Hartford as the insurer. In each case, the unloading ticket went to Hartford, the amount of insurance was noted and the commission man deducted that amount from the proceeds of the sale and remitted it to Hartford. The total premium on the nine transactions was $100.21.

On August 13, 1975, Clyde Swearingin, Jr., hauled a shipment of hogs owned by Marvin Miller of Carrollton to the Kansas City stockyards. Upon arrival there it was found that seven of the animals had suffocated en route. According to Clyde, Jr., he,

not Swearingin Brothers, was the trucker on the shipment and was so shown on the unloading ticket.

Clyde went to the Hartford office at the stockyards to report the loss. He spoke to Don Huebner, the Hartford local manager, who prepared a report of the claim. According to Huebner, when he asked Clyde who the insured was, Clyde stated: "My father, Clyde W. Swearingin." Huebner's report showed Clyde W. Swearingin as the insured and also stated that claim was reported by "insured." Clyde stated that he did not mention his father to Huebner and that he told Huebner that he was the trucker.

The shipment was handled as usual by Hartford who notified the commission man of the premium which was deducted from the amount due Miller, the owner.

On August 26, 1975, Hartford notified Swearingin of the denial of his claim. The amount of the premium was refunded to Miller. It may be inferred that the denial was on the grounds that Hartford had issued no policy of insurance covering Clyde W. Swearingin, Jr. Hartford also subsequently returned to Swearingin Brothers the $100.21 paid by them as premiums after the death of their father. The check was neither cashed nor returned to Hartford.

Swearingin brought suit, alleging that Hartford had sold to him a policy of liability insurance in effect at the time of the loss. Hartford made a general denial of the allegations of the petition and also specifically alleged that it had no policy of insurance or contract with plaintiff.

Evidence at the trial established the facts above set forth. Swearingin testified that the market value of the hogs lost was $1,185.41. He also testified that he had reimbursed Miller by giving him a note for that amount. The case was submitted under plaintiff's verdict-directing instruction which predicated a finding in favor of plaintiff if "defendant agreed by the acceptance of premiums to provide insurance to plaintiff" covering the loss.

The jury returned a verdict in favor of plaintiff for $1,185.41 "Recovery under the agreement," $131.00 "Recovery for interest," $118.54 "Recovery for penalty" and $1,680 "Recovery for attorney fees." After its motion for new trial had been overruled, Hartford appealed.

In this court, appellant contends that the trial court erred in overruling its motion for directed verdict because the evidence failed to prove a contract between appellant and the respondent. There is no doubt that respondent failed to prove the contract which he pleaded, i. e., a policy of insurance sold to respondent by appellant. The evidence was that the only policy issued had been issued to appellant's father and there was no evidence of any substitution of respondent as the insured under the policy. "When one contract is pleaded and another proved it amounts to a total failure of proof as to the contract relied upon and defeats recovery. *Ringer v. Holtzclaw*, 112 Mo. 519, 20 S.W. 800 [1892]; *Cook v. Harrington*, Mo.App., 54 S.W.2d 436 [1932]; *Hoffman v. Mastin*, Mo.App., 119 S.W.2d 1027 [1938]." *Heard v. Stahl*, 271 S.W.2d 68, 70[3] (Mo. App.1954). See *Wolfskill v. American Union Life Ins. Co.*, 237 Mo.App. 1142, 172 S.W.2d 471, 473[2] (1943); cert. quashed, *State ex rel. Wolfskill v. Shain*, 178 S.W.2d 446 (Mo.1944).

■ In this case, the appellant cannot be said to have assented to trial on the contract as submitted under respondent's verdict-directing instruction. Appellant's motion for directed verdict was based upon failure of proof of the contract alleged. The verdict-directing instruction is claimed to have been erroneous because unsupported by the pleadings. In such situation, Rule 55.33(b) is of no assistance to the respondent.

■ In this court, respondent does not answer the contention that he failed to prove the contract alleged in his petition. He responds to appellant's contention that the trial court should have sustained appellant's motion for directed verdict by stating that appellant is estopped from denying that respondent was an insured under his

father's policy. However, the respondent did not plead a claim based upon estoppel nor did he submit his case to the jury on such basis. In any event, the only estoppel warranted from the evidence would have operated in favor of Swearingin Brothers, based upon the prior dealings between respondent and Swearingin Brothers. Respondent testified quite unequivocally that he was the trucker in this case and that Swearingin Brothers was not involved. Therefore, reliance upon estoppel cannot sustain respondent's claim.

■ Insofar as the submitted theory of a contract of insurance based upon acceptance of a premium is concerned, there is no question that a contract of insurance may be enforceable, although it is not in writing. *Morris v. Reed*, 510 S.W.2d 234, 239[6] (Mo. App.1974). However, certain factors must have been agreed upon: "First, the subject-matter; second, the risk insured against; third, the amount; fourth, the duration of the risk; and fifth, the premium. It is not essential that all of these elements of the contract be expressly agreed upon if the intention of the parties to the contract in these particulars can be gathered from the circumstances of the case." *Chailland v. M.F.A. Mutual Ins. Co.*, 375 S.W.2d 78, 81[2] (Mo. banc 1964). In this case there was evidence that transit insurance extended "coverage for the hauling of livestock from a point of origin to the Kansas City Stockyards * * *;" that the policy covered the driver of the vehicle rather than the vehicle; the premium and the method of payment. However, there was no evidence as to whether the insurance was to have been a liability or indemnity policy. See 44 Am.Jur.2d, Insurance, § 1415, p. 265 (1969). Nor was there any evidence as to the amount of coverage.

The trial court should have sustained appellant's motion for a directed verdict. Inasmuch as respondent failed to produce evidence entitling him to recover on the theory of his submission in the trial court and the theory advanced in this court to likewise afford no basis for relief, there is no cause to remand for retrial on either such theory.

Judgment reversed.

All concur.