# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3408

_____

| | | |
|---|---|---|
| Agape Baptist Church, Inc., | * | |
| | * | |
| Plaintiff/Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Church Mutual Insurance Company, | * | |
| | * | |
| Defendant/Appellant, | * | |
| | * | |
| Brown & James, P.C.; | * | |
| Newsam Harp, Inc., | * | |
| | * | |
| Defendants. | * | |

_____

Submitted: June 10, 2002

Filed: August 8, 2002
_____

Before RILEY, BEAM, and MELLOY, Circuit Judges.
_____

BEAM, Circuit Judge.

Appellant Church Mutual Insurance Company (Church Mutual) appeals from a final judgment entered by the district court[1] pursuant to a jury verdict in favor of

_____

[1]The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

Agape Baptist Church, Inc. (Agape). Church Mutual contends that a jury instruction as to insurance contents coverage was not supported by substantial evidence and therefore seeks a new trial. Because we find sufficient evidence in the record to support submission of the instruction to the jury, we affirm.

Church Mutual insured Agape's property during a policy period extending from April 3, 1996, to April 3, 1999. After Agape was advised at a Christian Law Association seminar to reevaluate the adequacy of its insurance coverage, Church Mutual's agent, Bruce West, met with Agape's Pastor James Clemensen on April 22, 1998, to increase the amount of Agape's personal property blanket coverage.

Fire damaged a school operated by Agape on June 6, 1998, and Agape's personal property was destroyed by the fire. Agape claimed a loss of personal property in the amount of $186,339.66. However, Church Mutual limited Agape's recovery to $92,800, pursuant to an endorsement that was effective as of May 20, 1998, but delivered to Agape after the fire. Agape subsequently brought a contract action against Church Mutual to recover purportedly insured losses, alleging, among other things, that Church Mutual breached the insurance contract and that it vexatiously refused to pay policy proceeds. In its complaint, Agape alleged that Church Mutual "at all time[s] mentioned herein, regularly conducted its customary insurance business by and through its agent BRUCE WEST," and that "West solicited insurance business for [Church Mutual] and regularly advertised he was an agent of [Church Mutual]; and, West had actual, apparent or ostensible authority from [Church Mutual] to issue insurance contract binders of insurance and insurance policy endorsements on behalf of [Church Mutual]." Agape further alleged that, when the policy was issued, Church Mutual improperly set the personal property coverage limit at "$92,800[.00] instead of at $350,000.00 as agreed."[2] As a portion of damages

---

[2]At trial, Agape claimed that the amount agreed upon was at least $300,000.

-2-

under its breach of contract claim, Agape sought "the difference in the $92,800.00 and $350,000.00 Personal Property Insurance Contract Loss Event coverage."

The case was tried to a jury. In its supplemental trial brief, Agape revealed that it was basing its claim on an oral agreement made by agent West with Clemensen, to increase the policy's contents limit to $300,000. Because the district court apparently determined that during discovery Agape had not adequately disclosed information concerning West's oral statements, it excluded a good deal of testimony regarding such communications. However, testimony was received, to some degree, in response to Church Mutual's *cross-examination*, alluding to the oral agreement and Clemensen's belief that he had increased coverage to $300,000.

Included in the jury instructions was "Jury Instruction No. 8," which states:

> If you believe plaintiff Agape Baptist Church, Inc. and Bruce West orally agreed defendant Church Mutual Insurance Company was bound to at least $300,000 of personal property insurance policy coverage prior to June 6, 1998, as mentioned in the evidence, then you may not award more than $300,000 to plaintiff Agape Baptist Church, Inc. as damages for its personal property claim element under these instructions.

> If you do not believe plaintiff Agape Baptist Church, Inc. and Bruce West orally agreed defendant Church Mutual Insurance Company was bound to at least $300,000 of personal property insurance policy coverage prior to June 6, 1998, then you may not award more than $92,800 to plaintiff Agape Baptist Church, Inc. as damages for its personal property claim element under these instructions.

> In addition, you may award plaintiff Agape Baptist Church, Inc. nine percent (9%) per annum Missouri statutory interest from September 3, 1998[,] to the current date on the sum you find due and owing to plaintiff Baptist Church, Inc. as an element of plaintiff Agape Baptist Church, Inc.'s damages.

The jury returned a $150,000 verdict in Agape's favor on Church Mutual's policy, $37,125 for interest, and $15,000 as a penalty for vexatious refusal to pay. On appeal, Church Mutual argues that "Jury Instruction No. 8" improperly "permitted the jury to find that Agape had contents coverage of at least $300,000 based on an alleged oral agreement made by Church Mutual's agent, Bruce West."

The form and language of jury instructions are committed to the district court's sound discretion so long as the jury is correctly instructed on the substantive issues of the case. Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 711 (8th Cir. 2001). The substance of jury instructions in diversity cases is governed by applicable state law. Id. In such cases, "the jury instructions, when read as a whole, must fairly and adequately present the relevant state law." Id.

"A litigant is entitled to have the jury charged concerning his theory of the case if there is any evidence to support the claim, direct or circumstantial." Strudl v. American Family Mut. Ins. Co., 536 F.2d 242, 246 (8th Cir. 1976). Also, "in determining whether the evidence is sufficient to support the giving of a particular instruction, the evidence should be considered in the light most favorable to the party offering the instruction, giving it 'the benefit of all favorable inferences reasonably deducible therefrom.'" Hallberg v. Brasher, 679 F.2d 751, 757 n.6 (8th Cir. 1982) (quoting Underwood v. Crosby, 447 S.W.2d 566, 570 (Mo. 1969) (en banc)).

Under Missouri law, "an insurance company is bound by the acts of an agent acting within the scope of his apparent authority, or within the powers which it held out the agent as possessing, unless the limitations upon the agent's powers are known by or brought to the notice of the insured." Voss v. American Mut. Liab. Ins. Co., 341 S.W.2d 270, 276 (Mo. App. 1960). Also, "in the absence of any evidence that an applicant had knowledge or was put on notice of . . . restrictions [on the agent's authority], the applicant is not bound by them, and is entitled to rely and act upon the agent's apparent and ostensible powers." Id.

Missouri case law indicates that contracts of insurance "may be verbal or in writing, or partly in writing and partly verbal," so long as "the minds of the parties shall have met on all the essential terms of the contract." Chailland v. M. F. A. Mut. Ins. Co., 375 S.W.2d 78, 81 (Mo. 1964) (en banc). "'[W]here the minds of the parties for a valuable consideration have met on all the terms of the contract, it is complete and enforceable, although it was intended by the parties to be evidenced by a policy which, because of some fortuity, was not delivered before the happening of the event insured against.'" Id. (citation omitted). Elements of an oral contract under Missouri law include the subject matter, the risk insured against, the amount, the duration of the risk, and the premium. Id. However, "[i]t is not essential that all of these elements of the contract be expressly agreed upon if the intention of the parties to the contract in these particulars can be gathered from the circumstances of the case." Id. Furthermore, "[a]n oral contract of insurance is binding, although the premium is not to be paid at the time of its consummation if credit is given." Id.

The present matter does not implicate a purely oral agreement, but instead involves a claimed insurance contract that was "partly in writing and partly verbal." See id. At trial, the following colloquy between Church Mutual's counsel and Clemensen occurred:

> [Counsel for Church Mutual] Q: And you had a contract, you had a policy of insurance with Church Mutual Insurance Company?
>
> [Clemensen] A: Yes.
>
> Q: And in that contract, the insurance company made certain promises to you; right?
>
> A: That's right.

Furthermore, Agape read into evidence Church Mutual's admission, found within the pleadings, that West "had actual, apparent or ostensible authority from

insured's company to issue insurance contract binders of insurance and . . . insurance policy endorsements on behalf of insurance company." Also read into evidence was Church Mutual's admission that "it issued policy number 0151217-02-449714 to Agape Baptist Church and Boarding School; that Bruce West had inspected this property and that an increase in coverage was requested and approved shortly before the fire." The subject matter of the policy was divulged to the jury in Agape's reading of portions of the written contract. For instance, Agape's counsel read the following:

> Covered property . . . means the following types of property for which a limit of insurance is shown in the declaration page[:] . . . . your personal property . . . not otherwise insured under building, located in or on the building . . . consisting of the following. . . . furniture and fixtures[,] . . . machinery and equipment[,] . . . all other personal property owned by you and used in your operation. . . .

Evidence also indicated that Church Mutual would "pay for direct physical loss of or damage to covered property at the premises . . . caused by or resulting from any covered cause of loss." On cross-examination, Church Mutual elicited testimony from Clemensen that, at the time of trial, Agape was continuing to pay Church Mutual policy premiums.

At trial, many attempts to elicit testimony regarding Clemensen's dealings with Church Mutual's agent West were thwarted. However, paramount to the ultimate result is Church Mutual's admission in its answer "that it issued Policy No. 0151217-02-449714 to Agape Baptist Church and Boarding School, that Bruce West had inspected the property, and that an increase in coverage was requested and approved shortly before the fire." Church Mutual merely denied the amount of coverage agreed upon. We are, consequently, left to determine not whether there was sufficient evidence of an agreement to increase the amount of coverage, but what the evidence was as to the amount of the increase.

As earlier noted, we find that there was sufficient evidence in the record to support the $300,000 damages ceiling in Jury Instruction No. 8. The policy's written terms indicated that there was a personal property limit of insurance of $92,800. However, at trial, Clemensen testified that he thought that figure was wrong, and answered affirmatively when asked "[t]hat number should have been the [$]300,000 that you agreed to with Mr. West?" Clemensen testified that when West left their April 22, 1998, meeting, it was his understanding that the minimum amount of personal property blanket coverage would be "[a]t least [$]300,000" based on an inventory list of personal property items and accompanying fair market values and costs, and on his "agreements with Mr. West." He also testified that the increase in coverage was to have become effective immediately after April 22, 1998, pursuant to their agreement, and that the increased coverage was for at least $300,000 for the blanket personal property.

On cross-examination, Church Mutual, through its questioning and Clemensen's response, revealed that Agape increased its coverage under a policy with Church Mutual. Also, Church Mutual asked Clemensen, "you didn't make any changes[,] if I understood your testimony[,] until April 22nd when you had Bruce West come out to your property?" Clemensen responded, "[r]ight." Church Mutual also asked Clemensen, "[t]hen on April 22, 1998, the time you're saying that you discussed with Bruce West these changes, you made another change in your policy, didn't you?" Again, Clemensen responded "[r]ight." Moreover, Church Mutual told Clemensen, "[b]ut it's your testimony today that you had coverage as of April 22 for . . . $300,000 in content coverage." Also, in response to questioning as to whether Church Mutual gave Agape additional coverage after the fire, counsel for Church Mutual elicited Clemensen's testimony that "[o]n April 22nd . . . when [West] came to visit he did."

Giving Agape the benefit of all favorable inferences deducible from the evidence, we find that Jury Instruction No. 8 was sufficiently supported. Agape was

therefore entitled to have the jury charged concerning its theory of the coverage increase to $300,000. Thus, we conclude that the district court did not err in submitting the instruction and affirm.[3]

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[3]Because we have determined that the jury instruction was not improperly submitted, we need not reach the issues Agape set forth in its motion to dismiss and, consequently, deny that motion.